Thomas ORAWSKY

v.

JERSEY CENTRAL POWER AND
LIGHT COMPANY.

Civ. A. No. 76–2470.

United States District Court,
E. D. Pennsylvania,
Civil Division.

Dec. 2, 1977.

N. Carl Schwartz, Merion Station, Pa., for plaintiff.

Mark A. Aronchick, Philadelphia, Pa., for defendant.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

This lawsuit arises out of an unfortunate and tragic accident that left the plaintiff paralyzed from the neck down and inflicted with various debilitating injuries. The injuries occurred when the plaintiff dove off of a bulkhead on property owned by the defendant, Jersey Central Power and Light Company, into shallow water in Barnegat Bay, Lacey Township, New Jersey on August 8, 1974. Presently before the court is the motion of the defendants for summary judgment. Because I find the uncontroverted facts set forth in plaintiff's depositions demonstrate that the defendant owed no duty of care to the plaintiff, I will grant the defendant's motion.

The factual circumstances surrounding the accident are detailed in the uncontradicted deposition of the plaintiff taken on August 18, 1977. Plaintiff testified that on August 8, 1974, he went to the scene of the accident with two friends in order to spend the day fishing and crabbing (Tr. 46). He characterized the area as a swampy marshland (Tr. 26). He was fishing along a bulkhead on Barnegat Bay at the mouth of Oyster Creek (Tr. 62). Plaintiff had fished at the same spot previously and was familiar with the water depth immediately adjacent to the bulkhead because he had been in the water to untangle his lines on several occasions (Tr. 35–36). At about 2:30 in the afternoon on the day of the accident, the

lure on the plaintiff's fishing line was set afloat when a fish struck the line (Tr. 53). The lure was floating six to ten feet away from the bulkhead but was being swept away by the current. Because it was his last lure, the plaintiff took off his shirt and shoes and took a running dive head first into the water (Tr. 54–55). Although plaintiff had looked at the water before jumping and concluded that it was deep enough to dive,[1] it was not. He hit his head on the bottom and was saved from drowning by his companion (Tr. 56–57).

My first task in deciding this motion is to determine the applicable law. In deciding whether to apply Pennsylvania or New Jersey law on the issue of liability, I must apply the conflict of law rules of the forum state, Pennsylvania. *Klaxon Co. v. Stentor Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Pennsylvania has adopted the approach of applying the law of the state which has the most significant relationship with the "policies and interests underlying the particular issue before the court." *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 21, 203 A.2d 796, 805 (1964). The particular issue presented by this case is what duty, if any, a landowner owes to persons using his property. I find that New Jersey has the most significant interest in determining the duty owed by New Jersey landowners, and therefore I will apply New Jersey law.

With regard to tort liability, the Pennsylvania Supreme Court has recently stated that the place of the tort is of primary significance, at least where the defendant is a resident of the state where the tort occurred. *Cipolla v. Shaposka,* 439 Pa. 563, 267 A.2d 854 (1970). The court stated: "Inhabitants of a state should not be put in jeopardy of liability exceeding that created by their state's laws just because a visitor from a state offering higher protection decides to visit there." *Id.* at 567, 267 A.2d at 856–57. This principle is even more applicable here since the liability asserted is based on the defendant's ownership of land in New Jersey. A landowner should be able to rely on the law of the state where the land is situated in determining what duty is owed to people using the land and what measures should be taken to fulfill that duty. Thus, the defendant here is entitled to rely on New Jersey law in fulfilling its duty, if any, to persons found on its New Jersey property. At oral argument, plaintiff's counsel conceded that New Jersey law is applicable.

Thus, I must determine the effect of that state's Landowner's Liability Act, N.J.Stat. Ann. § 2A:42A–2 *et seq.* That Act states in relevant part:

Except as provided in section 2 of this act:

a. An owner, lessee or occupant of premises, whether or not posted as provided in section 23:7–7 of the Revised Statutes, owes no duty to keep the premises safe for entry or use by others for sport and recreational activities, or to give warning of any hazardous condition of the land or in connection with the use of any structure or by reason of any activity on such premises to persons entering for such purposes;

b. An owner, lessee or occupant of premises who gives permission to another to enter upon such premises for sport or recreational activity or purpose does not thereby (1) extend any assurance that the premises are safe for such purposes, or (2) constitute the person to whom permission is granted an invitee to whom a duty of care is owed, or (3) assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted.

N.J.Stat.Ann. § 2A:42A–3. By its terms the statute is quite broad. It seems to exempt from liability anyone whose "premises" are used for recreational purposes. New Jersey courts, however, have refused

---

**1.** "Q. How did you dive into the water?

A. I looked at the water pretty close, I thought it was alright to dive. I stepped back about thirty paces and ran and hit the bulkhead and flew into the air."

to apply the statute in some circumstances. It has been held that the act does not apply to residential properties. *Boileau v. DeCecco,* 125 N.J.Super. 263, 310 A.2d 497 (App. Div.1973), *affirmed* 65 N.J. 234, 323 A.2d 449. The act is also inapplicable where the landowner has willfully or maliciously created the hazard that caused the injury. *Krevics v. Ayars,* 141 N.J.Super. 511, 358 A.2d 844 (Law Div. 1976).

■ The plaintiff in this case has attempted to rely on the residential property exception announced in *Boileau v. DeCecco, supra.* His deposition, however, shows that this exception is not applicable. Plaintiff testified that to reach the scene of the accident it was necessary to turn off the paved road and travel about 250 yards down a sand road bordered on either side by swamps. At the end of the sand road was a wooden bridge in a state of disrepair which plaintiff walked across and then proceeded to walk another 50 yards to the water's edge where he was fishing at the time of the accident (Tr. 24–25). There were no buildings or other structures that could be seen from the site of the accident (Tr. 32). Clearly, the setting was not the residential one that the court in *DeCecco* found when it concluded that the act does not apply to activities conducted in "someone's backyard".

■ The plaintiff also seeks to rely on an express exception contained in the act which reads as follows:

This act shall not limit the liability which would otherwise exist:

(a) For willful or malicious failure to guard or to warn against, a dangerous condition, use, structure or activity

. . .

N.J.S.A. 2A:42A–4. In *Krevics v. Ayars, supra,* the court found that a landowner was not protected from liability for injuries resulting when a motor cyclist hit a cable that the defendant had placed across a bike trail on his property. The court reasoned that placing the cable across the trail was intentional and possibly malicious, and, therefore, there was at least an issue for the jury and summary judgment should be denied. In contrast, the record here is completely barren of any facts suggesting willful or malicious conduct on the part of the defendant. Plaintiff argues that the shallowness of the water at the point where the plaintiff was fishing was a dangerous condition and that the failure to warn against that danger was willful and malicious. A similar argument was rejected by the New Jersey Superior Court in *Odar v. Chase Manhattan Bank,* 138 N.J.Super. 464, 351 A.2d 389 (App.Div.1976), where the court stated:

Plaintiff argues that defendant's failure to fence, post, patrol or, in some manner, prevent licensees or trespassers from entering upon the property—with knowledge of prior frequent use for recreational purposes by others—creates a fact issue for resolution by the jury as to whether the failure of defendant to do so constitutes willful or malicious conduct. We disagree. We do not equate a failure to act under these circumstances with willful or malicious conduct. To do so would, in effect, defeat the obvious legislative intent.

*Id.* at 469, 351 A.2d at 391–392. The same analysis is applicable here. To construe the defendant's failure to warn of shallow water as "willful" conduct would render the statute meaningless. Whatever may be the case under traditional common law principles, there is clearly no liability under the New Jersey Landowner's Liability Act because there is clearly no "willful or malicious conduct" on the part of the defendant.

■ The plaintiff also attempts to avoid the effect of the Act by asserting that he should be classified as an "invitee" and that the act does not apply to "invitees". I do not believe, however, the New Jersey legislature intended that there be an exception to the application of the act for "invitees" in the sense that the plaintiff uses that term. The act does expressly exclude from its coverage "injury suffered in any case where permission to engage in sport or recreational activity on the premises was granted for a consideration . . . ." N.J.Stat.Ann. § 2A:42A–4(b). Thus, the

legislature provided an exception for the traditional "business invitee". *See* Restatement (Second) of Torts § 332 (1965). The plaintiff does not contend that he fits this express exception, but claims that he was somehow "invited" on the premises because the defendant did not discourage people from using the land for recreational purposes. As noted above, the court in *Odar v. Chase Manhattan Bank, supra* rejected the notion that a landowner's failure to keep individuals off the property deprived the owner of the protection of the act, and I see no reason to do otherwise in this case.[2]

■ Finally, at oral argument, it was asserted that the plaintiff was not engaged in "sport" or in "recreational activity" as required by the act. Again the record before me negates this contention. Plaintiff did testify at his deposition that he did not like to eat fish and, therefore, had planned to sell his catch to a friend who owned a seafood store (Tr. 51). There is no contention however, that plaintiff was fishing in order to make money or that the plaintiff was in the business of fishing or crabbing. On the contrary, when asked why he went fishing, the plaintiff answered, "I like to fish." (Tr. 51). He went to the area at his friend's invitation and in his friend's automobile (Tr. 14, 16). Clearly, plaintiff was engaged in "recreational activity" as that phrase is used in the act. *See* N.J.Stat.Ann. § 2A:42A–2.

■ Since the statute eliminates the duty of a landowner to keep the premises safe for use by others, there can be no liability for negligence, and, therefore, I must grant the defendant's motion for summary judgment. *Cousins v. Yaeger,* 394 F.Supp. 595 (E.D.Pa.1975). I find myself in agreement with the following language of the most recent New Jersey case interpreting the Act:

A legislative mandate cannot and should not be thwarted by the courts to achieve a result not contemplated or intended by the Legislature. Where that mandate is clearly expressed and there is no warrant for alternative construction, a court may not impose its view as to what the law should be.

*Magro v. City of Vineland,* 148 N.J.Super. 34, 39, 371 A.2d 815, 818 (App.Div.1977).

---

**2.** The record before me suggests that the plaintiff could be classified as a trespasser for he testified that although in the area of the bulkhead there were no signs, on the main road (Route 9) "No Fishing" and "No Trespassing" signs were posted (Tr. 29). At oral argument, plaintiff contended that the status of the in-

jured person is a question of fact for the jury; the New Jersey rule, however, is that it is a matter of "policy for judicial determination". *Benedict v. Podwats,* 109 N.J.Super. 402, 408, 263 A.2d 486, 489 (App.Div.), *affirmed,* 57 N.J. 219, 271 A.2d 417 (1970).