421 A.2d 392

Eva TUBNER, Administratrix of the Estate of Jerry Amey, Deceased, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.

Superior Court of Pennsylvania.

Argued Nov. 15, 1979.

Filed July 25, 1980.

Petition Granted Oct. 27, 1980.

Mark B. Aronson, Pittsburgh, for appellant.

John Newborg, Pittsburgh, for appellee.

Before PRICE, HESTER and CAVANAUGH, JJ.

PRICE, Judge:

The instant appeal presents this court with another opportunity [1] to decide a question of first impression [2] involving the interrelationship of the Uninsured Motorist Act [3] and the Pennsylvania No–fault Motor Vehicle Insurance Act.[4]  The specific issue raised is whether a company designated as a servicing insurance company under the Pennsylvania Assigned Claims Plan of the No–fault Act (*see* 40 P.S. § 1009.108) is required to pay not only the basic loss benefits specified by the Act, but also uninsured motorist benefits. We hold that the legislative intent requires inclusion of such payments within the assigned claims plan, and we therefore

1. *See, e. g., Brader v. Nationwide Mutual Insurance Company,* 270 Pa.Super. 258, 411 A.2d 516 (1979).

2. It appears from our research that no other state employing a "no–fault" motor vehicle insurance system has yet addressed this specific issue.

3. Act of August 14, 1963, P.L. 909, § 1, *as amended,* December 19, 1968, P.L. 1254, No. 397, § 1, effective January 1, 1969 (40 P.S. § 2000).

4. Act of July 19, 1974, P.L. 489, No. 176, Art. I, § 101 (40 P.S. §§ 1009.101 *et seq.*).

reverse the order of the court of common pleas and remand the case for further proceedings consistent with this opinion.

The pertinent facts are as follows. Decedent Jerry Amey died of injuries he received in a motor vehicle collision while riding in an uninsured automobile on October 3, 1977. Appellant, administratrix of the decedent's estate, obtained a default judgment against the driver of the uninsured car, but the driver was unable to satisfy the judgment. Appellant thereafter presented her claim to the Assigned Claims Bureau to obtain benefits under the No–fault Act. Appellee was designated as the assigned participating insurer, and it paid appellant those basic loss benefits prescribed in section 202 of the Act.[5] Appellant filed a motion for summary judgment in the court of common pleas, alleging that she was also entitled to uninsured motorist benefits under the assigned claims plan. Appellee filed a cross–motion for summary judgment, and the court of common pleas per order of the Honorable R. Stanton Wettick, granted appellee's cross–motion.

5. Section 202 (40 P.S. §. 1009.202) delineates the following "basic loss benefits:"

"(a) Allowable expense limits.–Allowable expense, as defined in section 103 of this act shall be provided or the equivalent in the form of a contract to provide for services required.

(b) Work loss limits.–Work loss, as defined in section 103 shall be provided:

(1) up to a monthly maximum of

(A) one thousand dollars ($1,000) multiplied by a fraction whose numerator is the average per capita income in this Commonwealth and whose denominator is the average per capita income in the United States, according to the latest available United States Department of Commerce figures; or

(B) the disclosed amount, in the case of a named insured who, prior to the accident resulting in injury, voluntarily discloses his actual monthly earnings to his obligor and agrees in writing with such obligor that such sum shall measure work loss; and

(2) up to a total amount of fifteen thousand dollars ($15,000).

(c) Replacement services losses.–Replacement services loss, as defined in section 103 shall be provided up to a daily maximum of twenty–five dollars ($25) for an aggregate period of one year.

(d) Survivors losses.–Survivors loss, as defined in section 103 shall be provided in an amount not to exceed five thousand dollars ($5,000)." (footnote omitted).

We recognize, at the outset, that the preamble to the No–fault Act proclaims that its purpose, *inter alia*, is "the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways." When interpreting this statute, we generally have employed a liberal construction so as to find coverage whenever feasible. As this court noted in *Heffner v. Allstate Insurance Co.*, 265 Pa.Super. 181, 187, 401 A.2d 1160, 1162–63 (1979):

> "Historically, the courts of this Commonwealth have routinely . . . found coverage for the insured in close or doubtful cases. The tendency has been that if we should err in ascertaining the intent of the legislature or the intendment of an insurance policy, we should err in favor of coverage for the insured." (footnotes omitted).

Similarly, we and our supreme court have acknowledged that the Uninsured Motorist Act is designed to give monetary protection to that "ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others," *Pattani v. Keystone Insurance Co.*, 426 Pa. 332, 338, 231 A.2d 402, 404 (1967), *see Adelman v. State Farm Mutual Automobile Insurance Co.*, 255 Pa.Super. 116, 386 A.2d 535 (1978), and that the legislative intent in promulgating the Act therefore requires a liberal construction of the statute and a "pronounced propensity . . . to find coverage unless equally strong legal or equitable considerations to the contrary are present." *Adelman v. State Farm Mutual Insurance Co., supra*, 255 Pa.Super. at 127, 386 A.2d at 540, *quoting Sands v. Granite Mutual Insurance Co.*, 232 Pa.Super. 70, 80, 331 A.2d 711, 716–17 (1974). *See also Harleysville Mutual Casualty Co. v. Blumling*, 429 Pa. 389, 241 A.2d 112 (1968). It is with these tenets in mind that we assess the merits of the instant appeal.

Under the assigned claims plan of the No–fault Act, claimants for whom insurance is not carried must present their claims to the Assigned Claims Bureau. The claims are

then allocated equitably among all insurance companies licensed in Pennsylvania to write automobile insurance. *See generally, Schimmelbusch v. Royal-Globe Insurance Co.*, 247 Pa.Super. 28, 371 A.2d 1021 (1977). Once the claim is assigned to a participating insurer, the claimant is entitled to recover "basic loss benefits." "Basic loss benefits," as defined in section 103 of the Act (40 P.S. § 1009.103), are:

> "benefits provided in accordance with this act for the net loss sustained by a victim, subject to any applicable limitations, exclusions, deductibles, waiting periods, disqualifications, or other terms and conditions provided or authorized in accordance with this act. Basic loss benefits do not include benefits for damage to property. Nor do basic loss benefits include benefits for net loss sustained by an operator or passenger of a motorcycle."

Appellee contends that benefits payable under the assigned claims section of the No–fault Act should be strictly limited to those benefits defined as "basic loss benefits" in section 103 and delineated in section 202 of the Act, and, initially, this argument seems persuasive. However, the section of the No–fault Act establishing the assigned claims plan additionally provides that "[c]laims shall be assigned so as to minimize inconvenience to claimants. *The assignee thereafter has rights and obligations as if he had issued a policy of basic loss insurance complying with this act applicable to the injury* . . . ." 40 P.S. § 1009.108. (emphasis added). Question then arises as to what constitutes a "policy of basic loss insurance complying with this act." At first blush, section 104(a) of the No–fault Act apparently answers this inquiry. Under that section:

> "Every owner of a motor vehicle which is registered or which is operated in this Commonwealth by the owner or with his permission, shall continuously provide security covering such motor vehicle while such vehicle is either present or registered in the Commonwealth. Security shall be provided for the payment of basic loss benefits, and for the payment of sums up to a total limit of thirty thousand dollars ($30,000) which the owner or any person

operating the vehicle with the express or implied permission of the owner may become liable to pay as damages because of bodily injury or death arising out of any one accident (subject to a sublimit of fifteen thousand dollars ($15,000) for damages arising out of the bodily injury or death of any one person) and for the payment of damages for injury to or destruction of property in any one accident of amounts up to a total limit of five thousand dollars ($5,000) . . . . "

Appellee contends that our inquiry should end here and that we should conclude that it satisfied its statutory obligation by paying appellant the full amount to which she was statutorily entitled–i. e., basic loss benefits. We disagree. The No–fault Act is not an independent entity in and of itself, but is merely a component of the total automobile liability insurance regulatory design. In this regard, we must consider not only the No–fault Act, but also the regulations promulgated by the Insurance Commissioners, which govern interpretation of the Act, and the Uninsured Motorist Act, which applies to all policies of motor vehicle liability insurance.

Under the Uninsured Motorist Act:

"No motor vehicle liability policy of insurance . . . shall be delivered or issued . . . unless coverage is provided therein . . . in limits for bodily injury or death as are fixed from time to time by the General Assembly in section 1421 of article XIV of 'The Vehicle Code,' act of April 29, 1959 (P.L. 58), under provisions approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . . " (footnote omitted).[6]

6. The legislature has permitted two exceptions to the mandatory inclusion of uninsured motor vehicle protection:
   1. P.U.C. or Interstate Commerce Commission certified vehicles designed for freight handling or certified as passenger conveyors; and
   2. The owner and/or operator of a vehicle that hauls freight or transports passengers and whose employees are covered by the

Recognizing this requirement, and in an apparent attempt to coordinate the Uninsured Motorist Act and the No–fault Act, the Insurance Commission promulgated § 66.1–104(a) of Chapter 31 of the Pennsylvania Code. 31 Pa.Code § 66.1–104(a). That regulation mandates that "in addition to the coverage required in section 104(a) of the act (40 P.S. § 1009.104(a)), coverage shall include uninsured motorist coverage in limits of $15,000 per person, $30,000 per accident." Because an assignee–insurance company under the No–fault Act is subject to the same obligations as if it had issued a policy of basic loss insurance under the Act and no policy (with certain exceptions not applicable here)[7] of automobile liability insurance may be issued in Pennsylvania without provision for uninsured motorist benefits, we conclude that the General Assembly intended the insurance company participating in the assigned claims plan to pay the claimant not only "basic loss benefits" but also uninsured motorist benefits if applicable.[8] It is only in this way that a claimant can be treated under the implied intention of the assigned claims plan, i. e., treat him as if he had maintained a policy of no–fault insurance.

Admittedly, attempts to discern the intent of the legislature with respect to various aspects of the No–fault Act frequently resolve into exercises in futility. We believe, however, that the result we reach today is in accord with the overall legislative intent discernible throughout the statutory scheme of automobile liability insurance and with the stated purpose of the No–fault Act to provide the maximum feasible restoration of all individuals injured. We therefore

Pennsylvania Workmen's Compensation Act, Act of June 2, 1915 (P.L. 736), as amended, 77 P.S. §§ 1, et seq.
Owners and/or operators of the above two classes of motor vehicles may, in writing, reject the uninsured motorist protection. See State Farm Mutual Automobile Insurance Co. v. Williams, 481 Pa. 130, 392 A.2d 281 (1978).

7. See 40 P.S. § 1009.208(a).

8. Of course, to be entitled to uninsured motorist benefits, a claimant under the assigned claims plan must qualify in the same way as if he had maintained a policy of automobile liability insurance, i. e., he must be injured by an "uninsured" motorist.

hold that appellant may recover uninsured motorist benefits (up to the limits specified in the insurance code) for those actual damages suffered which exceed the amount of no-fault insurance benefits received.

Accordingly, the order of the court of common pleas is reversed and the case is remanded to that court for further proceedings consistent with this opinion.