436 A.2d 621

**Eva TUBNER, Administratrix of the Estate of Jerry Amey, Deceased, Appellee.**

**v.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.**

Supreme Court of Pennsylvania.

Argued March 2, 1981.

Decided Nov. 5, 1981.

Application for Reargument Denied Dec. 29, 1981.

Charles J. Duffy, Jr., Weis & Weis, Pittsburgh, for appellant.

Mark B. Aronson, Behrend, Aronson & Morrow, Pittsburgh, for appellee.

Edward P. Zemprelli, Clairton, for amicus curiae Pa. Assigned Claims Plan, Philadelphia, Pa.

Richard C. Angino, Benjamin & Angino, P.C., Harrisburg, for amicus curiae Pa. Trial Lawyers Association.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

KAUFFMAN, Justice.

Before us is a question of first impression concerning the financial obligations of insurance companies under the No-Fault Motor Vehicle Insurance Act ("No-Fault Act").[1] At issue is whether a company designated to provide insurance coverage pursuant to the assigned claims plan of the No-Fault Act is required to pay not only "basic loss benefits," but also uninsured motorist benefits.[2]

Appellee, Eva Tubner, is administratrix of the estate of Jerry Amey ("decedent"), who died of injuries he received in a motor vehicle accident while a passenger in an uninsured automobile. Decedent did not own a motor vehicle, and thus had no applicable insurance under the No-Fault Act.[3] Pursuant to the assigned claims plan, appellant, State Farm Mutual Insurance Co. ("State Farm"), was designated as the participating insurer, and it paid appellee basic loss benefits.[4]

Contending, however, that she was also entitled to uninsured motorist benefits, appellee brought this action against

1. Act of July 19, 1974, P.L. 489, No. 176, §§ 101 *et seq.*, 40 Pa.S.A. §§ 1009.101 *et seq.*

2. Section 108 of the No-Fault Act provides for recovery by motor vehicle accident victims where no issued policy of basic loss insurance is applicable to the claim. 40 Pa.S.A. § 1009.108(a). Under the assigned claims plan, such claims are assigned to a member of a pool of participating insurers. 40 Pa.S.A. § 1009.108(b). Each company providing basic loss insurance coverage in the Commonwealth must participate in the assigned claims plan. *Id.*

3. Appellee obtained a default judgment against the driver of the uninsured vehicle, but it remains unsatisfied.

4. "Basic loss benefits" are defined in Section 103 of the No-Fault Act, 40 Pa.S.A. § 1009.103:

   "Basic loss benefits" means benefits provided in accordance with this act for the net loss sustained by a victim, subject to any applicable limitations, exclusions, deductibles, waiting periods, disqualifications, or other terms and conditions provided or authorized in accordance with this act. Basic loss benefits do not include benefits for damage to property. . . .

State Farm in the Allegheny County Court of Common Pleas. State Farm argued that the assigned claims plan does not contemplate recovery of uninsured motorist benefits, and both parties moved for summary judgment. The trial court ruled in favor of State Farm. The Superior Court reversed; we granted allocatur, and now affirm the order of the Superior Court 280 Pa.Super. 38, 421 A.2d 392.[5]

The Legislature's expressed purpose in adopting the No-Fault Act was to create a "low cost, comprehensive, and fair system" which uniformly would provide for "maximum feasible restoration" of *all* victims of motor vehicle accidents.[6] As defined in Section 108 of the No-Fault Act, the assigned claims plan departs from the prior system by providing for recovery when no source of insurance coverage otherwise exists.[7] Under Section 108(b), insurers are assigned to compensate motor vehicle accident victims for whom insurance is not carried *as if* a policy of basic loss insurance had been issued:

(2) The assigned claims bureau shall promptly:

(A) assign each claim for no-fault benefits to an assignee who shall be a participating insurer; . . .

. . . The assignee thereafter has rights and obligations, *as if he had issued a policy of basic loss insurance* complying with this act applicable to the injury . . . . (Emphasis added).[8]

5.  Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, 42 Pa.C.S.A. § 724(a). This opinion was reassigned to this writer on June 25, 1981.

6.  Legislative findings and purposes are set forth in Section 102 of the No-Fault Act, 40 Pa.S.A. § 1009.102.

7.  Prior to the No-Fault Act, an accident victim without applicable motor vehicle insurance coverage, such as a passenger or pedestrian, was without recourse if injured by an uninsured driver lacking personal funds to satisfy a tort judgment. The assigned claims plan was designed to provide a source of coverage for such victims.

8.  40 Pa.S.A. § 1009.108(b).

Every policy of basic loss insurance issued in this Commonwealth must include all coverage mandated by the No-Fault Act and by the Insurance Department Regulations validly promulgated thereunder. Section 104(a) of the Act requires, *inter alia,* policy coverage for basic loss benefits and for indemnification in the event of liability for general damages.[9] Insurance Department Regulation 66.1–104(a) ("Regulation 66.1–104(a)") additionally requires uninsured motorist coverage providing for payment of general damages to an insured party injured by an uninsured motorist:

§§ 66.1–104(a). Required motor vehicle insurance.

(a) In addition to the coverage required in section 104(a) of the act (40 P.S. § 1009.104(a)), coverage shall include uninsured motorist coverage in limits of $15,000 per person, $30,000 per accident. . . .

31 Pa. Code §§ 66.1–104(a).[10]

Because assigned insurers are obligated precisely *as if they had issued basic loss insurance policies,* and because *every* policy of basic loss insurance issued in Pennsylvania *must include uninsured motorist coverage,* the right to uninsured motorist benefits under the assigned claims plan fol-

9. Section 104(a) provides, in pertinent part:

(a) Security covering a motor vehicle.—Every owner of a motor vehicle which is registered or which is operated in this Commonwealth by the owner or with his permission, shall continuously provide security covering such motor vehicle while such vehicle is either present or registered in the Commonwealth. *Security shall be provided for the payment of basic loss benefits, and for the payment of sums* up to a total limit of thirty thousand dollars ($30,000) *which the owner or any person operating the vehicle with the express or implied permission of the owner may become liable to pay as damages* because of bodily injury or death arising out of any accident (subject to a sublimit of fifteen thousand dollars ($15,000) for damages arising out of the bodily injury or death of any one person) and for the payment of damages for injury to or destruction of property in any one accident of amounts up to a total limit of five thousand dollars ($5,000). . . . (Emphasis supplied).

10. The validity of Regulation 66.1–104(a) has remained unchallenged since it was issued in 1975, and is not challenged here. A lawfully promulgated administrative regulation is as valid and binding as the statute under which it was adopted. *Girard School District v. Pittenger,* 481 Pa. 91, 95, 392 A.2d 261, 262 (1978).

lows *a fortiori* from a straightforward reading of the statute and the regulation lawfully promulgated thereunder.[11]

Any other interpretation of appellee's statutory rights under the assigned claims plan would frustrate the Legislature's intention, expressed in Section 102 of this remedial legislation, to provide maximum feasible restoration to all accident victims in a comprehensive, fair, and uniform manner.[12] Adoption of State Farm's view would have the discriminatory effect of affording recovery of general damages to all motor vehicle accident victims injured by uninsured motorists except those covered by the assigned claims plan, and thus would perpetuate many of the harsh results of the outdated fault system by denying general damages to innocent victims of irresponsible drivers.[13]

**11.** State Farm bases various additional arguments on provisions of the Uninsured Motorist Act, Act of August 14, 1963, P.L. 909, § 1, *as amended,* December 19, 1968, P.L. 1254, No. 397, § 1, 40 Pa.S.A. § 2000, which codified the requirement of uninsured motorist coverage in liability insurance policies under the previously existing fault system. The coverage contemplated by that Act, however, is distinct from the uninsured motorist coverage required in all policies issued under the No-Fault Act. Accordingly, *Johnson v. Yellow Cab Co. of Philadelphia,* 456 Pa. 256, 317 A.2d 245 (1974), wherein we held that benefits under the Uninsured Motorist Act are payable only when a valid insurance policy has been issued, is inapposite. *Johnson* interpreted the law as it existed prior to the No-Fault Act, when there could be no recovery from an insurer without a valid policy. Under the assigned claims plan, however, an insurance company is obligated *as if* a valid policy *had been issued.* Thus, benefits under the plan obviously cannot be conditioned on the existence of a policy. *See* 40 Pa.S.A. § 1009.108(a).

**12.** 40 Pa.S.A. § 1009.102(a)(3), (4), (8).

**13.** Basic loss benefits and uninsured motorist benefits are separate and distinct, and cannot be set off against one another. *See Brader v. Nationwide Mutual Ins. Co.,* 270 Pa.Super. 258, 411 A.2d 516 (1979); *Carnevale v. Sentry Ins. Co.,* 469 F.Supp. 681 (W.D. Pa. 1979). Because a claimant under the assigned claims plan is covered *as if* he had obtained a policy of basic loss insurance, his right to uninsured motorist benefits cannot be distinguished from that of holders of valid insurance policies.

Accordingly, we affirm the order of the Superior Court.[14]

NIX, J., filed a dissenting opinion in which ROBERTS, J., joined.

NIX, Justice, dissenting.

I dissent. The majority incorrectly assesses the legislative intent underlying the Pennsylvania No-Fault Motor Vehicle Insurance Act (No-Fault Act)[1] in finding that a servicing insurance company under the assigned claims plan is required to pay, in addition to basic loss benefits, the uninsured motorist benefits.

The ascertainment by a court of legislative intent is significantly circumscribed where the General Assembly has expressly set forth its purposes in the passage of the legislation. *Commonwealth v. Pope,* 455 Pa. 384, 317 A.2d 887 (1974); *see also, Commonwealth v. Rieck Inv. Corp.,* 419 Pa. 52, 213 A.2d 277 (1965); *Calvert Distillers Corp. v. Bd. of Finance & Revenue,* 376 Pa. 476, 103 A.2d 668 (1954); *Kusza v. Maximonis,* 363 Pa. 479, 70 A.2d 329 (1950). In the performance of this function, it must be remembered that courts are not free to make their own policy judgments, but must defer to those made by the legislature. *Mayhugh v. Coon,* 460 Pa. 128, 331 A.2d 452 (1975); *Hochgertel v. Canada Dry Corp.,* 409 Pa. 610, 187 A.2d 575 (1963); *Altieri v. Allentown Officers & Emp. Ret. Bd.,* 368 Pa. 176, 81 A.2d 884 (1951); *Petition of Salvation Army,* 349 Pa. 105, 36 A.2d 479 (1944); *Orawsky v. Jersey Central P. & L. Co.,* 472 F.Supp. 881 (E.D. Pa. 1977). Here, there is no question as to the constitutionality of the legislative action; we are being called upon simply to determine what the legislature did in

14. State Farm also alleges that appellee violated a provision of the Uninsured Motorist Act by bringing her tort action against the uninsured motorist without first obtaining State Farm's written consent. Apart from the fact that we have concluded that the Uninsured Motorist Act is not applicable to appellee's claim, we note that State Farm failed to raise the issue in the courts below, and it therefore has been waived.

1. Act of July 19, 1974, P.L. 489, No. 176, Art. 1, §§ 101 *et seq.,* 40 P.S. § 1009.101 *et seq.*

this regard. Our judgment as to the wisdom of choices has no place in such an analysis *Mayhugh v. Coon, supra.*

The majority has focused upon that portion of the findings and purposes of the No-Fault Act which provides for "the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways" while paying lip service to the Act's express purpose of creating a "low cost, comprehensive and fair system" of recovery. *See* Section 102(a)(3). Relying upon the former finding, the majority proceeds to conclude that "[b]ecause assigned insurers are obligated precisely *as if they had issued basic loss insurance policies,* and because every policy of basic loss insurance issued in Pennsylvania *must include uninsured motorist coverage,* the right to uninsured motorist benefits under the assigned claims plan follows *a fortiori* from a straightforward reading of the statute...." ante at 623.

However, a careful review of the legislative findings negates the majority's interpretation and clarifies the General Assembly's use of the phrase "maximum feasible restoration" in Finding Three (3). In Finding Four (4) the legislature recognized that "it is necessary and proper to have a Statewide *low-cost,* comprehensive and fair system...." Finding Six (6) identifies the need for a "basic system of motor vehicle accident and insurance law which: (A) assures every victim payment of *all his basic* medical and rehabilitation costs, and recovery *of a reasonable amount* of work loss, replacement services and survivor's loss; ...." In Finding Nine (9), the legislature again stressed the need for "a Statewide, *low-cost,* comprehensive and fair system..." and identified its objective as being to provide a system capable of "paying the cost of services so that every victim has the opportunity to: (A) receive prompt and comprehensive professional treatment; and (B) be rehabilitated to the point where he can return as a useful member of society...." Finally, in Finding Ten (10) the legislature noted again the need to provide insurance rates at a level so

that "economically deprived individuals" would have access to them.

Following the above referred to findings, the legislature set forth in section 102(b) its purpose in passing the Act in question as being: "Therefore, it is hereby declared to be the policy of the General Assembly to establish at reasonable cost to the purchaser of insurance, a Statewide system of prompt and adequate basis loss benefits for motor vehicle accident victims and the survivors of deceased victims."

From the foregoing it is obvious that the initial premise of the majority is an oversimplification of the legislature's perception of the needs and their proposed scheme to meet those needs. The term "maximum feasible restoration" must be construed in light of the stated intent to provide low-cost coverage accessible to the "economically disadvantaged" and to provide "adequate basic loss benefits." Within this context, we would agree that a liberal construction may be employed to find coverage consistent with this legislative intent.

However, in construing the No-Fault Act, like any other piece of legislation, the legislature is deemed to have intended that which it clearly stated, and it is not our function to extract an intent the legislature totally failed to convey. *Commonwealth v. Pope, supra; Commonwealth v. Rieck Inv. Corp., supra.* Nor is it proper for us to create an ambiguity when under a fair common sense reading of the language none exists. For the reasons that follow I am satisfied that the legislature has clearly expressed its intention in this case and that judgment may not be ignored regardless of how appealing the alternatives offered may be.

There is no dispute that the broad purpose of the No-Fault Act was to provide a comprehensive scheme to protect innocent victims of motor vehicle accidents. This broad purpose, however, fails to support the proposition that uninsured motorist benefits be payable under the assigned claims plan. The No-Fault Act makes no reference to the Uninsured Motorist Act. Rather, the two Acts are free-standing

acts, adopted more than ten years apart, and evidence no intent that their remedial measures, though in instances complimentary, must be co-extensive in all situations.[2] Moreover, the financial impact of the majority's ruling will have serious ramifications as to the possibility of providing the *low-cost* coverage sought to be achieved under the No-Fault Act.

A comparison of uninsured motorist coverage[3] and of the assigned claims plan reveals that the legislature was addressing different concerns and that the policy considerations were not necessarily the same. Before passage of the Uninsured Motorist Act, an *insured* accident victim seeking compensation could proceed only in tort. If the negligent driver was uninsured the victim would ordinarily receive no

2. Insured individuals have been permitted to recover uninsured motorist benefits, up to the policy limit, for those actual damages suffered which exceed the amount of basic loss benefits received or owing under the No-Fault Act. The reasoning advanced for this stacking of no-fault and uninsured motorist benefits is that the insured injured claimant has paid an additional payment in exchange for coverage above and beyond that afforded under the No-Fault Act, and the insurance company would reap a windfall if the insured claimant is not reimbursed for his non-economic losses under the uninsured motorist coverage. *Brader v. Nationwide Mutual Ins. Co.*, 269 Pa.Super. 258, 411 A.2d 516 (1979); *Carnevale v. Sentry Ins. Co.*, 469 F.Supp. 681 (W.D. Pa. 1979). However, the question here is whether the No-Fault Act intended to confer uninsured motorist benefits where no uninsured motorist policy has been issued and no premiums have been paid for those benefits.

3. The Uninsured Motorist Act, 40 P.S. § 2000, enacted in 1963 and amended in 1968 provides in relevant part that:
(a) No motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto in limits for bodily injury or death as are fixed from time to time by the General Assembly . . . , under provisions approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. . . .

compensation for his injuries. The purpose and intent of the Uninsured Motorist Act was to assure widespread availability to the public of insurance protection against financial loss caused by negligent financially irresponsible motorists and thereby placing the insured in the same position he would have been if the uninsured motorist had minimum liability insurance coverage. Thus, uninsured motorist coverage was provided "for the protection of persons *insured* under a policy of motor vehicle liability insurance, 40 P.S. § 2000(a) (emphasis added) who are promised that with payment of an additional premium they will have available to them limited coverage from their insurance carrier if they become involved in an accident with a negligent uninsured motorist." No such promise is made to the uninsured person whose sole source of recovery is under the assigned claims plan.

In contrast, the thrust of section 108 of the No-Fault Act is to provide limited compensation to an accident victim without regard to fault when there is no insurance applicable to the accident. The fact that the legislature under the terms of the assigned claims plan of the No-Fault Act, Section 108, deemed it advisable to permit recovery of benefits thereunder without the issuance of a policy or the payment of premiums does not reflect a decision to discard the requirement of an existent policy and payment of premiums for the recovery of uninsured motorist benefits. Nor can we say that the situations are so similar that there are no policy considerations that would justify different results. Such a significant change in the law relating to entitlement for uninsured motorist benefits should be clearly announced and not inferred from a contrived ambiguity.

All of the arguments advanced in support of the result reached by the majority begin with the premise that the legislature, in enacting the No-Fault Act, intended to create a comprehensive system coordinating no-fault as well as uninsured motorist benefits. This premise is offered even though there is no direct reference to the earlier Uninsured

Motorist Act at any place in the No-Fault Act. Moreover, the premise ignores that the No-Fault Act set forth explicit findings and its purpose, Section 102, without reference to this presumed intent to coordinate the two Acts. Nor is there any expressed conflict between the provisions of the two Acts which would necessitate an attempt on our part to reconcile the two pieces of legislation.

The No-Fault Act sets forth in detail the benefits conferred thereunder, *see* Sections 103, 104, 201, 203, 205 and the circumstances under which those benefits are payable. *See* Sections 106, 108, and 204. Again, there is no direct reference to the benefits recoverable under the earlier Uninsured Motorist Act. The arguments supporting the view that the No-Fault Act also authorizes payment of uninsured motorist benefits, even though there would be no entitlement under the terms of the Uninsured Motorist Act itself, [4] stem from the use of the phrase "a policy of basic loss insurance" once in the entire Act, in section 108. The significance of this terminology, as urged, was obviously not perceived by the legislature who made no effort to define it or to specify its importance. From this single departure from the term "basic loss benefits" which is defined and used throughout the Act the majority concludes that the assigned loss claim section, Section 108, requires the payment of uninsured motorist benefits in addition to no-fault even though no policy for such coverage existed nor premiums paid for such protection.

A close reading of Section 108 indicates the legislature intended the benefits available under the assigned claims plan to be limited to "basic loss benefits." That section specifically provides that the insurance carrier to whom the claim is assigned "has rights and obligations as if he had issued a policy of basic loss insurance *complying with this*

---

4. Uninsured motorist coverage is available only "for the protection of persons insured" under a "motor vehicle liability policy of insurance." 40 P.S. § 2000(a). *See also State Farm Mutual Auto. Ins. Co. v. Williams*, 481 Pa. 130, 138, 392 A.2d 281, 285 (1978).

*act."* Section 108(b) (emphasis added). The italicized words clearly reflect that the benefits being referred to at this point were benefits set forth in the No-Fault Act itself. This is manifestly incompatible with the conclusion that the legislature intended to refer to the provisions of some other Act.

An analysis of Section 108 reveals that the legislature did use other terms when it was unquestionably referring to "basic loss benefits." For instance, it used "basic benefits," "basic restoration benefits," and "no-fault benefits." It is obvious the legislature's use of the term "basic loss insurance" was again nothing more than an equivalent for "basic loss benefits."

The majority also seeks to reinforce its conclusion by asserting the Insurance Commission Regulation, Section 66.-1–104(a) which provides that in addition to coverage required in Section 104(a) of the No-Fault Act, coverage shall include uninsured motorist coverage. Even in this aspect the argument is specious. The mere fact the Insurance Commissioner sought to coordinate the provisions of the two Acts regarding the requirements for the issuance of a policy of motor vehicle insurances does not in any way reflect a legislative judgment to dispense with an issued policy and the payment of premiums for the recovery of uninsured motorist benefits. The regulation merely coordinated the No-Fault Act with the Uninsured Motorist Act regarding the requirements for the *issuance* of a policy of motor vehicle insurance. It did not intend to effectuate such a significant change in the law through such an oblique method. It is a well established principle that statutes are not presumed to make changes in the rules or principles of prior existing law beyond what is expressly declared in their provisions. *Commonwealth v. Miller*, 469 Pa. 24, 27–28, 364 A.2d 886, 887 (1976); *Rahn v. Hess*, 378 Pa. 264, 270, 106 A.2d 461 (1954); *Gratz v. Insurance Co. of North America*, 282 Pa. 224, 234, 127 A. 620 (1925).

Accordingly, the Order of the Superior Court should be reversed and the summary judgment entered by the trial court reinstated.

ROBERTS, J., joins in this opinion.