**Schultz v. Nationwide Insurance Co.**

*Robert A. Rovner*, for plaintiff.
*John J. Hart*, for defendant.

LUDWIG, *J.*, July 23, 1982—Adopting a procedure in the nature of a motion for summary judgment, the parties, through counsel, stipulated to the facts and submitted the case to us for disposition under Bucks Co.R.C.P. *266(b).

This is an assumpsit action for work-loss benefits and medical expenses claimed under the Pa. No-fault Motor Vehicle Act, Act of July 19, 1974, P.L. 989, 40 P.S. § 1009.101 et seq. ("No-fault Insurance Act.") Defendant counter-claimed for reimbursement of benefits paid in alleged excess of plaintiff's statutory entitlement.

The stipulated facts are as follows:

1. On June 11, 1980, plaintiff filed a complaint for no-fault benefits resulting from an accident that occurred on August 23, 1978 in which plaintiff, a pedestrian, was struck by a vehicle operated by Mary Schultz, who was defendant's insured.

2. As set forth in the complaint, plaintiff incurred the following bills:

| | |
|---|---|
| Special boots for brace | $ 60.00 |
| Delcrest Medical Products | 23.50 |
| John R. Cocco, Inc. | 475.00 |
| | $558.50 |

In addition, defendant did not pay plaintiff wage-loss benefits for the period from August, 1979 to December 31, 1980.

3. For the period from August 24, 1978 to August 24, 1979, defendant paid plaintiff the total sum of $12,000, representing no-fault wage-loss benefits at the rate of $1,000 per month.

4. The maximum amount of wage-loss benefits collectible under section 202 of the No-fault Insurance Act is $15,000, 40 P.S. § 1009.202. After deduction of the sum of $12,000 in wage-loss benefits already paid to plaintiff, the maximum additional amount available is $3,000.

5. From May 7, 1979, plaintiff received social security benefits as follows: $620 per month to September 7, 1979 for a total of $2,516; $692.30 per month from September 7, 1979 to December 31,

1980 for a total of $11,076.80; for the entire period, a total of $13,592.80.

6. On March 28, 1979, plaintiff signed a release in settlement of his claim against Mary Schultz, Nationwide's insured, for $15,000, and Nationwide agreed to continue to pay any medical bills arising from the accident. The amount of the release represented the maximum work-loss benefits but as stated in paragraph three, defendant paid pro tanto $12,000.

7. Plaintiff did not advise defendant that he was receiving social security disability benefits until August 22, 1979. See letter dated January 11, 1980 from defendant insurance company to plaintiff's attorney requesting information regarding plaintiff's social security. Defendant did not respond to this letter.

The issues raised by the parties focus on the meaning of §206(a) of the Pennsylvania No-fault Motor Vehicle Act, supra, 40 P.S. §1009.206(a), and the effect of plaintiff's release.

Section 206(a) of the Pennsylvania No-fault Motor Vehicle Insurance Act states:

Except as provided in section 108(a)(3) of this act, all benefits or advantages (less reasonably incurred collection costs) that an individual receives or is entitled to receive from social security (except those benefits provided under Title XIX of the Social Security Act and except those medicare benefits to which a person's entitlement depends upon use of his so-called "life-time reserve" of benefit days) workmen's compensation, any State-required temporary, nonoccupational disability insurance, and all other benefits (except the proceeds of life insurance) received by or available to an individual because of the injury from any government, unless the law authorizing or providing for

such benefits or advantages makes them excess or secondary to the benefits in accordance with this act, shall be subtracted from loss in calculating net loss. (Footnotes omitted.)

In their interpretations of this section, the parties differ. Defendant would add together all of the benefits received by plaintiff, regardless of when received, and subtract the total amount from the $15,000 work-loss maximum allowable under the act. Plaintiff, on the other hand, would subtract the amount of social security payments received only for the two months in which plaintiff received both social security and no-fault benefits. To our knowledge, the question thus presented has not been previously resolved.

The No-fault Insurance Act contains the Legislative declaration of purpose: "The maximum feasible restoration of all individuals injured." Id., Section 102(a)(3); 40 P.S. § 1009.102(a)(3). Also, the Superior Court has stated, on a number of occasions, that in close or doubtful cases " if we should err in ascertaining the intent of the legislature or the intendment of an insurance policy, we should err in favor of coverage for the insured." Heffner v. Allstate Insurance Co., 265 Pa. Super. 181, 187, 401 A. 2d 1160, 1163 (1979). See Tubner v. State Farm, 280 Pa. 38, 436 A. 2d 621 (1981) (insurer under assigned claims plan required to pay uninsured motorist benefits as well as basic loss benefits); Saunders v. State Farm Ins. Co., 294 Pa. Super. 424, 440 A. 2d 538 (1982) (insured entitled to award for expenses under uninsured motorist coverage even though already paid for same expenses under personal injury protection coverage); Augostine v. Pennsylvania National Mutual Casualty Ins. Co., 293 Pa. Super. 50, 437 A. 2d 985 (1981) (insured collected basic work-loss benefits

under his personal insurance policy while receiving workmen's compensation); Marchese v. Aetna Casualty & Surety Co., 284 Pa. Super. 579, 426 A. 2d 646 (1981) ("stacking" of insurance policies allowed in order to increase amount available to the insured); Erie Insurance Exchange v. Sheppard, 39 Pa. Commw. 30, 394 A. 2d 1074 (1978) (insurer precluded from subtracting government employee's sick pay in calculating work-loss benefits).

The facts of this case strongly favor adopting the coverage rationale. Plaintiff began receiving work-loss benefits almost immediately after the accident, in August, 1978. According to plaintiff's answers to interrogatories, he applied for social security disability benefits in October, 1978. His application having been "denied about 6-8 weeks later," plaintiff appealed. His appeal was successful and his social security payments started in May, 1979. In all cases, the waiting period for social security disability benefits is "[a]t least five consecutive months . . . from the month in which [the] period of disability begins." 20 C.F.R. §404.320(a)(4)(1981).

The effect of the interpretation proposed by defendant would limit plaintiff's recovery to $535.71 per month. This figure is computed by dividing the maximum amount of no-fault benefits—$15,000—by the number of months from the date of the accident to plaintiff's last social security payment. Here, that period is about 28 months. In addition, the total work-loss benefits would come to $1,407.20 since defendant's reading of the act would reduce the $15,000 limitation by the total amount of social security benefits paid, $13,592.80.

Under plaintiff's approach, a claimant would receive no more per month from both benefit sources than that allowable under the No-fault Insurance

Act, i.e., $1,000 per month for 15 months, and the insurance company would bear no greater burden than it should have anticipated under the act: Id., Section 202, 40 P.S. § 1009.202.

Given that the legislature sought to avoid double recovery of work-loss benefits, Id., Section 103.206(a), 40 P.S. § § 1009.103; 206(a), nothing in the act or in logic suggests that disabled claimants should receive less in no-fault benefits during the social security waiting period than their wage-loss entitlement or even what they would eventually be paid by social security.[1] Nor is it sensible to say a further insurance "windfall" should be created by stretching out the no-fault period to equal the period of social security disability and using that monthly total as the $15,000 divisor.[2]

Plaintiff's argument that the release bars defendant's claim for reimbursement is unfounded. His theory is that the release constituted a contract between himself and the insurance company for the payment to him of work-loss benefits. Even if this were so, the release would not preclude defendant's claim. "[A] release covers only those matters which may be fairly said to have been within the contemplation of the parties when the release was given, [and] . . . the general words of a release will not be construed so as to bar enforcement of a claim which has not accrued at the date of the release."

1. See Bewley v. Aetna Life & Casualty, _____ Pa. Super. _____, 444 A. 2d 176, 178 (1982) for discussion of necessity of providing benefits during an analogous waiting period under the workmen's compensation law.

2. This computation can not be made prospectively so that defendant's position appears to be highly impractical and unrealistic.

Restifo v. McDonald, 426 Pa. 5, 9, 230 A. 2d 199, 201 (1967). Considering the facts of this case, the issue of double recovery was not apparent at the time of the release. Furthermore, the terms of the act expressly provide for this defense,[3] and the right to a defense survives a release unless the instrument expressly states to the contrary: Wenger v. Ziegler, 424 Pa. 268, 226 A. 2d 653 (1967).

Therefore, we enter the following

## ORDER

Ane now, July 23, 1982, upon consideration under Bucks Co.R.C.P. *266, the parties' stipulated request for disposition in the nature of summary judgment is ruled upon as follows: (1) plaintiff is entitled to medical benefits of $558.50 and to wage-loss benefits not to exceed $3,000, up to the statutory maximum, subject to a deduction of the amount of social security payments applicable to each month in which wage-loss benefits are payable; (2) defendant is entitled to reimbursement in the amount of social security benefits received by plaintiff applicable to the period in which wage-loss benefits have been paid; and (3) the above amounts are to be set off against each other and judgment for and against the respective parties will be entered in the amount so assessed. For the purpose of this assessment, the parties will file a statement of their positions within 20 days setting forth their calculations and the net amount after set off.

---

3. Id., Section 206(a), 40 P.S. §1009.206(a).