Audrey C. Orner, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

636

Argued May 11, 1979, before Judges Blatt, Di-Salle and MacPhail, sitting as a panel of three.

*Kandace F. Foust,* for appellant.

*Linda M. Gunn,* Assistant Attorney General, for appellee.

Opinion by Judge MacPhail, August 8, 1979:

Audrey C. Orner (Appellant) here appeals the adjudication and order of the Department of Public Welfare (DPW), which affirmed a prior verbal denial of her request for a child care allowance.

Appellant receives Aid to Dependent Children (ADC), assistance for herself and two children in the amount of $302.00 a month. Although Appellant is

exempt from the Work Incentive Program (WIN) benefits, due to the ages of her children, she nevertheless voluntarily registered with the Bureau of Employment Services (BES), and expressed a desire to enter into a practical nurse training program. The BES referred Appellant to the Altoona Area Vocational Technical School (VoTech), where she was given an entrance examination. Appellant failed that examination in the areas of mathematics and biology.

Previous to the aforesaid events, Appellant received a high school diploma in June of 1972. While in high school, Appellant had pursued a business curriculum which afforded little or no training in biology and mathematics. Accordingly, VoTech referred Appellant to the Community Education Center (Center) where she enrolled in mathematics and biology courses. Appellant dutifully attended most of the sessions of those courses, successfully completed her studies, and has retaken the entrance examination for practical nurse training.

While Appellant was taking the courses at the Center, her children were being cared for by a babysitter. After she had begun her studies at the Center and had employed the babysitter, Appellant reported what she was doing to the Blair County Board of Assistance (CAO) during a home visit, and requested an allowance for child care pursuant to the regulations found at 55 Pa. Code §175.23(c)(3)(ii),[1] which read as follows:

> (ii) The actual reasonable cost of care for the child or children of a client or care for a sick or disabled adult provided the following

---

[1] The regulation currently found at 55 Pa. Code §175.23(c)(3) (ii) is identical to the one involved herein with one exception. The word "relative" has been added between the phrases "other caretaker," and "in High School," as found in subsection C of that regulation.

three conditions are met. Section 169.43 of this title (relating to requirements) gives detailed instructions for the provisions of child care services and payment. The expense is attributable to the following:

(A.) The participation of the client in WIN.

(B.) His participation in a non-WIN training program or work experience project that is part of the training plan of the Department for the individual.

(C.) The attendance of a mother or other caretaker in high school, the GED program, or undergraduate college and the following occur:

(I) The care cannot be provided by other household members.

(II) No other sound plan can be made for the care.

Sometime in May of 1978 the CAO issued a verbal denial of Appellant's request for child care assistance. Appellant filed a timely appeal and a hearing was held on July 10, 1978. After hearing and a review of testimony, the hearing examiner ruled that although Appellant met all of the income eligibility requirements she met none of the qualifying criteria set forth in the regulation. Accordingly, benefits were denied Appellant and this appeal followed.

"Our scope of review in cases of this nature is limited to a determination of whether the adjudication was in accordance with law, whether constitutional rights were violated and whether all necessary findings of fact were supported by substantial evidence." *Musselman v. Department of Public Welfare*, 39 Pa. Commonwealth Ct. 537, 540, 395 A.2d 1047, 1049 (1979).

Appellant argues alternatively that either she is eligible for benefits under a literal or liberal interpretation of the regulation, or, if she is excluded by its

terms and this Court's interpretation thereof, the regulation is invalid because it violates the Social Security Act,[2] her due process rights, and/or her constitutional right to equal protection under the law.

We agree with DPW's interpretation of the regulation. It would be difficult to construe "attendance in high school" to include attendance by an individual with a high school diploma at a Community Education Center which is not a part of the high school.

It is well settled that an agency's interpretation of its own regulation is entitled to great weight. *State Dental Council and Examining Board v. Pollock,* 457 Pa. 264, 318 A.2d 910 (1974).

In the instant appeal the regulation clearly excludes Appellant and we are satisfied that it does so without violating Appellant's constitutional rights.

When deciding whether the classifications embodied in this regulation violate the equal protection clause of the Fourteenth Amendment to the Constitution of the United States, the Court must determine whether the classification bears a rational relationship to a legitimate state interest. *Fritsch v. Department of Public Welfare,* 19 Pa. Commonwealth Ct. 83, 338 A.2d 706 (1975). The purpose of the regulation is to provide guidelines for the disbursement of the limited resources available to DPW for child care. We believe this constitutes a legitimate state interest. Likewise, we hold that the classification of those eligible for benefits as set forth in the regulation bears a direct rational relationship to that state interest. To construe the regulation otherwise would permit an unlimited number of claims arising from individuals requesting allowances for child care, for continuing education not previously approved by DPW.

---

[2] 42 U.S.C. §601, et seq.

The regulation provides for child care expenses during a claimant's participation in WIN or in a department approved non-WIN training plan or a claimant's attendance in high school, the General Equivalency Diploma program or undergraduate college. All of these programs are capable of being regulated. If an individual is taking courses prerequisite to a degree or an approved training plan, the regulation assures that the limited resources available will be allocated without threat of abuse.

In the instant case, Appellant may very well have qualified for the benefits she now claims had she merely adhered to the regulation by having her training program approved by DPW prior to participating in it. We are not unmindful of the great strides Appellant appears to have made to improve herself by becoming self-sufficient, which certainly is in keeping with the intent of the Social Security Act. However, there is no assurance that others who claim similar benefits, although excluded by the terms of the regulation, will be equally meritorious.

The legislative intent behind the Act is to aid as many individuals as possible. However, DPW operates with limited resources. Therefore, some guidelines must be provided in order to insure that those individuals who sincerely desire to advance themselves are provided with benefits, whereas those who would abuse the system are excluded. We conclude that the regulation here in dispute provides the necessary guidelines to fulfill the legislative intent.

Finally, Appellant presents the patently absurd argument that the regulation, as interpreted and applied, violates the due process clause because it creates an "irrebuttable presumption" that high school graduates taking high school courses cannot be furthering vocational goals. It is sufficient for us to say that if a high school graduate takes high school

courses under an approved training plan or under WIN she will be granted benefits under the regulation. Otherwise, a question, but certainly not an irrebuttable presumption exists as to the validity of the individual's reasons for pursuing this line of vocational training.

In view of the foregoing, we affirm.

ORDER

AND Now, this 8th day of August, 1979, the order of the Department of Public Welfare, dated August 1, 1978, is hereby affirmed.