The Odd Fellows Home of Pennsylvania, Petitioner v. Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued June 5, 1980, before Judges Wilkinson, Jr., Blatt and Williams, Jr., sitting as a panel of three.

*Robert E. Yetter, Metzger, Wickersham, Knauss & Erb,* for petitioner.

*John A. Kane,* Assistant Attorney General, for appellee.

Opinion by Judge Williams, Jr., January 16, 1981:

The Odd Fellows Home of Pennsylvania (Home) has appealed to this Court from an order of the Department of Public Welfare (DPW) reducing the amount of allowable costs for which the Home would be given reimbursement under the state Medical Assistance Program. Specifically contested is DPW's reduction of the Home's reimbursable interest expense by $62,537.00, following DPW's audit for the last six months of 1976.

The Home is a Pennsylvania non-profit corporation. Its stated purpose is to operate a residence for the care and support of aged members of the Odd Fellows Order, their wives, aged widows of deceased members, and other persons desiring to become residents by the payment of maintenance charges. It is

also declared in the statement of corporate purpose that the Home shall be operated as a long-term care facility according to the standards and regulations for skilled nursing and intermediate care facilities.

To comply with federal and state laws and regulations, the Home constructed a new patient care facility in 1976, using about $2,720,000.00 in borrowed capital. As a participant in the Medical Assistance Program, the Home became eligible for the reimbursement for certain costs after appropriate adjustments were certified by state auditors. In making its audit determination and annual adjustment for the period from July 1, 1976 to December 31, 1976, DPW reduced the Home's allowable or reimbursable interest expense by the amount of the investment income which the Home realized from several funds under its control.

DPW's regulations governing the reimbursement of costs are set forth in the Medical Assistance Program Manual For Allowable Cost Reimbursement For Skilled Nursing and Intermediate Care Facilities (Manual).[1] The Manual clearly specifies interest as an allowable cost item. However Section IV(D)(10)(e) provides that:[2]

> Interest expense reduced by investment income, except when the investment income is derived from gifts or grants which are *restricted by the donor* and which are accounted for separately from other funds, will be recognized. (Emphasis added.)

The thrust of this Section is clear: the amount of interest expense to be reimbursed is to be reduced by the

---

[1] 5 Pa. B. 2928 (1975).

[2] For purposes of convenience and to be in harmony with the designation adopted by the litigants, Section IV(D)(10)(e) of the Manual is hereinafter referred to as Section IV.10(e).

amount of investment income earned by the care provider, except where the investment income is derived from gifts or grants which the donors have restricted. DPW's determination reducing the Home's allowable interest by $62,537.00 was based on that Section.

The appellant's initial argument is that the Manual's treatment of investment income is inconsistent with federal regulations. Specifically, the appellant points to 42 C.F.R. §405.419, which in effect provides that the amount of interest expense to be allowed as a cost is *not to be reduced by investment income* derived from gifts and grants, whether restricted or unrestricted. However, the appellant's reliance on that federal regulation must fail: 42 C.F.R. §405.419 is a regulation under the Federal Medicare Program, whereas the state Medical Assistance regulation here in issue is under the Medicaid Program. *Cf. Temple University v. Department of Public Welfare*, 47 Pa. Commonwealth Ct. 22, 27, 407 A.2d 92, 95 (1979). Medicaid is a state and federal cooperative program administered by the states.[3] In sum, Section IV 10(e) of the Manual need not be consistent with 42 C.F.R. §405.419.

The Home also contends that the investment income here in question was derived from specific funds which represented the accumulation of donor-restricted gifts and grants. From that the Home further argues that the income should not have been

---

[3] "Medicaid" refers to a state plan or program of medical assistance that has been approved by the United States Department of Health, Education and Welfare or a successor agency under Title XIX of the Federal Social Security Act, 42 U.S.C. §§1396 *et seq. See* 55 Pa. Code §1101.21. Pennsylvania's Medical Assistance Program was authorized pursuant to Sections 441.1 *et seq.* of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* added by Section 5 of the Act of July 31, 1968, P.L. 904, *as amended,* 62 P.S. §§441.1 *et seq.*

used as an off-set or reduction of the allowable interest cost even under Section IV 10(e) of the Manual.

The income generating funds, five in number, were established by the Home's corporate by-laws.[4] The by-laws also prescribe the purposes for which the principal may be expended. From that the Home has fashioned a rather gymnastic argument: it argues that because the Home's corporate by-laws restrict the Home's use of the funds, persons who made gifts or grants that went into those funds adopted the by-law restrictions and constructively attached them as restrictions on their gifts. Although this argument rings with inventiveness, it must readily fail. Other reasons aside, Section IV 10(e) of the Manual by its terms narrows the source of restriction to the *donor himself*. That clearly means restriction directly and expressly imposed by *the donor* as a condition of his gift or grant.

There is not room under the narrow terms of the Section for a process of imputing to a donor an imagined adoption of restrictions contained in independent sources. To accept the appellant's argument would permit any such organization to avoid the reduction mandated by Section IV 10(e), through the simple expedient of declaring in its by-laws the purposes for which various funds might be used.

In keeping with the above discussion as to the meaning of the term "restricted by the donor," as set forth in Section IV 10(e), we must reject the Home's additional assertion that the term is "void for vagueness." We do not view the term "restricted

---

[4] The five funds were as follows: Building Fund, Benevolent Fund, Permanent Fund, Resident Deposit Fund, and General Fund. The investment income from these funds totaled $62,537.00, the amount by which DPW reduced the allowable interest expense.

120

by the donor" to be one that would require persons of common intelligence to guess at its meaning. *See Connally v. General Construction Co.*, 269 U.S. 385 (1926); *Pennsylvania State Board of Pharmacy v. Cohen*, 448 Pa. 189, 292 A.2d 277 (1972).

Even if we were to assume that the term in question warranted a more specific definition in the regulation itself, and we do not believe that such is required, it is a principle of construction that words and phrases are to be construed according to their common usage. *See Derry Township v. Swartz*, 21 Pa. Commonwealth Ct. 587, 346 A.2d 853 (1975). Common usage of the term "restricted by the donor" points to the meaning we have given it and the meaning DPW gave it in this case. Further, an agency's interpretation of its own regulation is entitled to great weight. *E.g., Orner v. Department of Public Welfare*, 44 Pa. Commonwealth Ct. 635, 404 A.2d 452 (1979).

The remaining point of contest centers upon just one of the Home's several funds involved in this case, one designated as the "Building Fund." The income earned on that fund was part of the investment income by which DPW reduced the Home's allowable interest expense. However, the appellant contends that $525,000.00 of the principal of the "Building Fund" represents "funded depreciation." The significance of that contention is that by force of Section IV(D)(10)(f) of the Manual, income from "funded depreciation" shall *not* be used to reduce allowable interest expense. In short, it is the appellant's position that income earned on that $525,000.00 should not have been used to reduce the reimbursable interest expense.

Regarding the last issue, it is worth noting that Section IV(D)(9)(j) of the Manual recommends,

even when not required by other legal provision, that a facility such as the Home set up a "funded depreciation" account so that funds will be available for asset replacement. What is striking in the instant case is that DPW, in its adjudication, expressly found as a matter of fact that the Home had transferred the $525,000.00 to the "Building Fund" to set up a "funded depreciation" account; and DPW also found that its auditors failed to give consideration to the "funded depreciation." Notwithstanding Section IV(D)(10)(f) of the Manual and DPW's own findings, the agency did use the income from the "funded depreciation" to reduce the allowable interest expense.

To justify disregarding what DPW itself found to be a "funded depreciation" account, the agency's adjudication first makes the vague assertion that the Home was not "informative" about the account during the audit. The adjudication does not indicate how the Home failed to be "informative" about the account. Certainly at some stage in the adjudicatory process the Home was the source of enough information for DPW to make the finding it did concerning the account. The other reason advanced by DPW was that the Home had already received the maximum allowable reimbursement rate. Yet, the adjudication provides no specific basis for that conclusion.

For the reasons set forth we affirm DPW's adjudication, but only in part. We affirm except as to the $525,000.00 which DPW found to be "funded depreciation." As to that sum we remand this case to DPW with the following directions: (1) to treat that sum according to the mandate of Section IV(D)(10)(f) of the Manual; and (2) to determine and specify whether the result of such recalculation is owing to the Home as additional reimbursement.

122

## ORDER

AND NOW, the 16th day of January, 1981, the adjudication and order of the Department of Public Welfare in the above matter, dated June 7, 1979, is affirmed except as to the sum which the Department found to constitute "funded depreciation." As to that sum the case is remanded to the agency for proceedings consistent with the annexed opinion.