Medicenter Hospital, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued October 6, 1983, before Judges CRAIG, MAC-PHAIL and DOYLE, sitting as a panel of three.

*James K. McNamara, Quinn, Gent, Buseck and Leemhuis, Inc.,* for petitioner.

*Bruce G. Baron,* Assistant Counsel, for respondent.

OPINION BY JUDGE MACPHAIL, December 2, 1983:

Medicenter Hospital (Petitioner), a skilled nursing facility, has appealed from an order of the Department of Public Welfare (DPW) which dismissed Petitioner's exceptions to DPW's audit findings for the fiscal years 1977-78, beginning on July 1, 1977.[1] In particular, Petitioner objects to DPW's refusal to allow Medical Assistance reimbursement for rental payments as a cost item separate from those costs which are subject to certain regulatory ceiling limitations. We affirm.

The facts of this case, as stipulated by the parties, reveal that Petitioner began operating as a skilled nursing facility in 1972. The facility used by Petitioner was leased for an annual rental fee of $206,-809.61 during both of the years 1977-78. Beginning on July 1, 1976, DPW implemented the federally mandated[2] cost-related method of reimbursing skilled nursing and intermediate care facilities for Medical

---

[1] Petitioner initially also challenged the 1976 audit. At the hearing before the examiner, however, Petitioner specifically limited its appeal to the period beginning on July 1, 1977 (N.T. at 45).

[2] The applicable federal provision appeared at §1902(a)(13)(E) of the Social Security Act, Act of August 14, 1935, Ch. 531, Title XIX, added by the Act of July 30, 1965, §121(a), 79 Stat. 344 (current version at 42 U.S.C. §1396a(a)(1)(A) (West Supp. 1975-82)).

Assistance services provided.[3] Under this system, facilities were to be reimbursed for "allowable costs" subject to certain regional reimbursement ceilings. At all times here relevant reasonable rental expense has been an allowable cost "for leasing of facilities from non-related parties in an arm's length transaction". Section IV(D)(14) of the Program Manual, 5 Pa. B. 2933 (1975).[4] Rental expense, however, is one of the costs which are subject to the group cost ceilings. Prior to July 1, 1977, depreciation and interest were also considered allowable costs subject to the cost ceiling limitations. Section IV(D)(9) of the Program Manual, 5 Pa. B. 2932 (1975).

On July 1, 1977, DPW amended its regulations to permit facilities to claim depreciation and interest as separate cost items to be excluded from the group ceiling limitations on net operating costs. *See* Section III(E) of the Program Manual, 7 Pa. B. 2700 (1977).[5] The primary beneficiaries of this amendment were owner-operated facilities. Petitioner contends that the failure of DPW to permit rental expense to be excluded also from the cost ceilings is violative of federal statutory law and constitutes a denial of equal protection.

Although not vigorously pursued on appeal, Petitioner first argues that DPW misinterpreted its own regulations when it denied separate reimbursement for rental expense. It is well settled, of course, that an agency's interpretation of its own regulations is

[3] The pertinent regulations appear in the "Medical Assistance Program Manual for Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities" (Program Manual) which was initially published at 5 Pa. B. 2928-34 (1975).

[4] It has been stipulated that the lease agreement here involved was from a non-related lessor in an arm's length transaction.

[5] The July 1, 1977 effective date of this amendment is provided at 7 Pa. B. 3091 (1977).

entitled to considerable weight. *Orner v. Department of Public Welfare,* 44 Pa. Commonwealth Ct. 635, 639, 404 A.2d 452, 454 (1979). We think it is clear that DPW has reasonably and correctly interpreted its regulations. As of July 1, 1977, the regulations permitted reimbursement for depreciation and interest on capital indebtedness without regard to the group cost ceilings,[6] while including rental expense as a cost subject to those ceiling limitations.

Petitioner next argues that, assuming DPW has correctly applied its regulations, then the regulations are violative of Title XIX of the Social Security Act (which provides for the Medicaid system) and regulations promulgated thereunder. We disagree.

Pennsylvania's Medical Assistance Program is administered pursuant to Section 201 of the Public Welfare Code (Code),[7] in association with the federal Medicaid system. Federal statutory law provided during the time pertinent to the instant case, that state medical assistance plans must provide:

effective July 1, 1976, for payment of the skilled nursing facility and intermediate care facility services provided under the plan *on a reasonable cost related basis,* as determined in accordance with methods and standards which shall be developed by the State on the basis of cost-finding methods approved and verified by the Secretary.... (Emphasis added.)

42 U.S.C. §1396a(a)(13)(E) (current version at 42 U.S.C. §1396a(a)(13)(A)); *see also* Section 443.1 of

---

[6] The regulations do, however, provide separate limitations on allowable depreciation and interest. After July 1, 1976, a maximum $22,000 construction cost per bed was allowed for depreciation purposes, subject to annual review. Section IV(d)(9) of the Program Manual, 7 Pa. B. 2700 (1977).

[7] Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §201.

the Code, 62 P.S. §443.1. Moreover, the states are directed "to assure that payments . . . are not in excess of reasonable charges consistent with efficiency, economy, and quality of care. . . ." 42 U.S.C. §1396a (a)(30).

Federal case law clearly establishes that under 42 U.S.C. §1396a(a)(13)(E), "Congress intended that the states be afforded considerable latitude in the areas of cost-finding and rate-setting. . . ." *DeGregorio v. O'Bannon*, 500 F. Supp. 541, 546 (E.D. Pa. 1980). The states are free both to define allowable cost items and to set values for the reasonable costs of those items. *Alabama Nursing Home Association v. Harris*, 617 F.2d 388, 392 (5th Cir. 1980). The Medical Assistance payments need not reimburse for the *actual* costs a facility incurs in treating eligible patients. Instead, the states may reimburse only for *reasonable* costs incurred by a facility. *DeGregorio*, 500 F. Supp. at 547-48. Federal regulations do provide, however, that "[p]ayment rates must not be set lower than rates that the agency reasonably finds to be adequate to reimburse in full the actual allowable costs of a facility that is economically and efficiently operated." 42 C.F.R. §447.302(b) (1978).

As we have noted, Pennsylvania Medical Assistance regulations have at all times provided for the reimbursement of necessary and reasonable costs for the proper care of Medical Assistance patients. Section III of the Program Manual, 5 Pa. B. 2930 (1975). Reasonable rental expense is included as one of the allowable costs. Section IV(D)(14) of the Program Manual. While, as conceded by DPW, the record does contain evidence that Petitioner was not reimbursed for *all* of its rental costs, Petitioner failed to demonstrate that the reimbursement paid by DPW was not reasonable and consistent with an efficiently

and economically operated facility. Petitioner argues, instead, that the failure of DPW to treat rental expense in the same manner as depreciation and interest is itself a violation of federal law. Petitioner would appear to argue that DPW's decision to separately reimburse facilities for depreciation and interest reflected a recognition that reasonable costs for housing could not be reimbursed within the ceiling limitations. As will be seen, however, we conclude that the separate reimbursement of depreciation and interest was not intended to indicate that the cost ceilings were unreasonable, but rather, was provided as an added incentive for capital expansion to increase the stock of available Medical Assistance beds in Pennsylvania. Thus, absent evidence that the DPW regulations do not provide reimbursement for *reasonable* rental expense, we conclude that Petitioner has failed to meet its burden of proving that DPW's regulations are inconsistent with federal law.

Petitioner's final argument is that the refusal to separately reimburse leased facilities for rental expense constitutes a denial of equal protection in light of the separate treatment of depreciation and interest for owner-operated facilities. In the area of social welfare law, a regulatory classification does not violate the Equal Protection Clause of the Fourteenth Amendment[8] if it bears a rational relationship to a legitimate state interest. *Orner,* 44 Pa. Commonwealth Ct. at 639, 404 A.2d at 454. "The Equal Protection Clause does not require that a state must choose between attacking every aspect of a problem or not attacking the problem at all. . . . It is enough that the State's action be rationally based and free from invidious discrimination." *Dandridge v. Williams,* 397 U.S. 471, 486-87 (1970).

[8] U.S. Const. amend. XIV.

The intent behind DPW's decision to separately reimburse depreciation and interest was set forth in its proposed rulemaking as follows:

> *In order to encourage new construction and improvements in current facilities,* allowable depreciation and interest on capital indebtedness shall be isolated as separate cost items. Reimbursement for allowable depreciation and interest shall be made by the Department to each facility on a percentage basis each fiscal year. Allowable costs for depreciation and interest are excluded from group ceiling limitations. (Emphasis added.)

7 Pa. B. 1649 (1977). Federal law recognizes that a state may incorporate incentives into its reimbursement formula to encourage growth, improvements and higher quality care. *DeGregorio,* 500 F. Supp. at 548. We think that the incentive provided by separate consideration of depreciation and interest is rationally related to the legitimate goal of improving the quality and availability of services for Medical Assistance patients. Moreover, we do not think it was improper for DPW to decline to extend the same incentive to leased facilities. In our opinion DPW could rationally conclude that separate reimbursement for rental expense would not as effectively result in improved quality or availability of skilled nursing or intermediate care services. We, accordingly, conclude that Petitioner has failed to prove that the regulations here challenged result in a denial of equal protection.

Order affirmed.

## ORDER

The order of the Department of Public Welfare, Office of Hearings and Appeals, dated October 5, 1981, is hereby affirmed.