508 A.2d 368

Anthony Del Borrello, D.O., Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

508

Argued February 7, 1986, before Judges MACPHAIL and COLINS, and Senior Judge BLATT, sitting as a panel of three.

*Donald W. Lehrkinder, Sr., Lehrkinder & Gillingham,* for petitioner.

*Mary Frances Grabowski,* Assistant Counsel, with her, *Stanley Slipakoff,* for respondent.

OPINION BY JUDGE MACPHAIL, April 23, 1986:

Anthony Del Borrello, D.O. (Petitioner) appeals an order of the Department of Public Welfare (DPW) Office of Hearings and Appeals which adopted the recommendations of the hearing officer suspending Petitioner from participating as a provider in the Medical Assistance Program (Medicaid) for a period of three years and ordering him to reimburse DPW in the amount of $15,034.09 because of poor record keeping. We affirm.

By letter dated February 22, 1983, DPW notified Petitioner that it was suspending him from participating in Medicaid for a period of three years and that it would seek restitution of $17,181.82 in Medicaid payments for services billed to Medicaid from September 1, 1980 through June 30, 1981. During this period, Petitioner had no formal medical provider agreement although such an agreement was executed on May 1, 1982.[1]

At the hearings, DPW properly introduced into evidence eighty-six patient charts that had been reviewed by DPW. Counsel for DPW and Petitioner stipulated that DPW would offer expert testimony on a sample of the charts as representative of the whole. Following the

---

[1] Petitioner was an osteopathic physician rendering medical services at Fairmount Health Center (Fairmount). By the terms of an agreement executed in 1977 between Fairmount and Petitioner, Petitioner submitted his bills for services to Fairmount. Fairmount did the clerical work of sending statements to Medicaid. Medicaid made payments to Fairmount from which Fairmount deducted an agreed upon sum for clerical services and office space used by Petitioner. The balance was given to Petitioner. The agreement specifically provides that Petitioner is an independent physician and not an employee of Fairmount. Although Petitioner does not admit that he received payment from Fairmount for the total amount claimed by DPW for the period in question, neither has he presented any evidence that he did not receive those monies. During the period for which restitution is sought, Petitioner had his own Medicaid identification number.

hearing, the hearing officer sustained Petitioner's three year suspension but modified the amount of restitution to $15,034.09.[2]

Our scope of review of orders of DPW is limited to determining whether the adjudication was in accordance with the law, whether constitutional rights were violated and whether the findings of fact are supported by substantial evidence. *Brog Pharmacy v. Department of Public Welfare*, 87 Pa. Commonwealth Ct. 181, 487 A.2d 49 (1985). Moreover, we may not disturb an agency's exercise of its discretion absent fraud, bad faith or a blatant abuse of discretion. *Wengrzyn v. Cohen*, 92 Pa. Commonwealth Ct. 154, 498 A.2d 61 (1985).

We note initially that Medicaid is a federally-funded program, established by Title XIX of the Social Security Act, 42 U.S.C. §§1396-1396i. Participating states are to ensure that physicians keep records necessary to fully disclose the extent of services rendered and to make such records available to state and federal governments. 42 U.S.C. §1396(a)(27). Furthermore, these states are required to adopt procedures to safeguard against fraud and abuse. 42 C.F.R. §§447.45(f)(2), 456.23 (1985). In accordance with federal guidelines, DPW requires medical providers participating in Medicaid to maintain records that fully disclose the nature and extent of the services rendered to Medicaid recipients. 55 Pa. Code §1101.51.

Petitioner first contends that DPW is limited in the sanctions it can invoke for poor record keeping.[3] Regu-

---

[2] Ten charts were the subject of testimony. The hearing examiner found that eight of the ten charts would support reimbursement for 14 of 16 office visits. Since the fraction 14/16 represents a percentage figure of 87½, the examiner simply multiplied the amount DPW claimed by 87½%. The result is $15,034.09.

[3] Petitioner's brief and oral argument is to the effect that although his record keeping may not have been in strict accord with

lation 1101.51(e)(4), 55 Pa. Code §1101.51(e)(4) provides that DPW may terminate its written agreement with a medical provider where the provider's services are not documented in accordance with the required standards. Petitioner argues that since termination is the only sanction provided by the regulation, DPW can neither suspend Petitioner nor can it exact restitution from him. An agency's interpretation of its own regulation is entitled to great weight. *Orner v. Department of Public Welfare,* 44 Pa. Commonwealth Ct. 635, 404 A.2d 452 (1979). We hold that DPW's interpretation of Regulation 1101.51(e)(4) is correct. Where an agency has the right to terminate an agreement in its entirety, it certainly has the right to impose a lesser included penalty of suspension of that agreement.

Regarding the matter of restitution, DPW regulations which were in effect at the time of the events in question provided for restitution as follows:

> If the Department determines that a provider has billed and has been paid for *undocumented or unnecessary services,* or that he has erroneously billed, it will review his paid invoices and compute the amount of the overpayment or improper payment. *The provider will be required to pay this amount either directly or by offset on his future invoices.* (Emphasis added.)

55 Pa. Code §1101.81(a) (rescinded, effective 1983).[4] DPW construes this regulation to permit DPW to com-

---

DPW's regulations, it was not inaccurate or incompetent. It appears to us after a careful review of the record submitted, however, that Petitioner's record keeping clearly was not in accord with DPW regulations. DPW has made no charge that the records were inaccurate or that Petitioner rendered incompetent services. It has charged that the records are inadequate to support the charges made.

[4] A similar DPW regulation currently providing for restitution is found at 55 Pa. Code §1101.83. DPW is also empowered to com-

pel a medical provider to make restitution where his documentation is so poor that DPW is unable to make a determination of the necessity of the services billed to Medicaid. We do not believe that DPW has abused its discretion in its interpretation of 55 Pa. Code §1101.81(a).

Petitioner next contends that there is no legally competent evidence to prove that the sums claimed by DPW were actually received by him. We previously have indicated[5] that Petitioner had an agreement with Fairmount by the terms of which he received a portion of the sums actually billed. The fact remains, of course, that the deductions made by the facility where he performed his services were for clerical services and use of office space. Petitioner would have been required to pay those sums if there had been direct billing. We hold that argument to be without merit.

DPW's somewhat unusual method of determining the amount due in a claim for restitution is specifically authorized by Section 1407(c)(1) of the Act, 62 P.S. §1407(c)(1). Pursuant to that authority, DPW adopted the regulation appearing at 55 Pa. Code 1101.83(a) which provides that the amount of restitution due for services may be determined by "statistical sampling methods." This authority, of course, does not relieve DPW of the burden of proving its case by competent

---

pel restitution where the medical provider has failed to follow the proper methods of documentation *and* the treatments "are of little or no benefit to the recipient, are below the accepted medical treatment standards, or are unneeded by the recipient." Section 1407(a)(6) of the Public Welfare Code (Act), Act of June 13, 1967, P.L. 31, *added by*, Act of July 10, 1980, P.L. 493, *as amended*, 62 P.S. §1407(a)(6). Because DPW has conceded that the quality of Petitioner's services is not in question, the statutory penalty for mistreatment is inapplicable in the present case.

[5] *See* Footnote 1.

evidence. It does appear that evidence adduced by statistical sampling methods has been used and approved in other jurisdictions where adequate opportunity was afforded Petitioner to rebut the sample. *Illinois Physicians Union v. Miller,* 675 F.2d 151 (7th Cir., 1982); *State of Georgia, Department of Human Resources v. Califano,* 446 F. Supp. 404 (N.D. GA. 1977); and *Quality Clinical Laboratories, Inc. v. Department of Social Services,* 141 Mich. App. 356, 367 N.W.2d 390 (1985). Such rebuttal opportunity was here afforded to Petitioner. In the instant case, the sample selected appeared to be representative of the cases reviewed. As we have noted, Petitioner stipulated that the testimony offered with respect to the sample would be the same for the other cases. While the amount of restitution is substantial, we cannot say as a matter of law that the basis for it is not supported by substantial evidence.

Petitioner finally contends that DPW's penalties are excessive and contrary to constitutional protections of due process and the fundamental principle of fairness, particularly because (1) there are no uniform professional standards of medical record keeping and (2) DPW never supplied him with its regulations. We cannot agree. Regulation 1101.51(e)(1), 55 Pa. Code §1101.51 (e)(1) adequately sets forth the minimum standards for medical records. DPW was not obliged to supply Petitioner with a copy of its regulations because a health provider is charged with knowledge of applicable DPW regulations. *Divine Providence Hospital v. Department of Public Welfare,* 76 Pa. Commonwealth Ct. 188, 463 A.2d 118 (1983).

We conclude that the findings of the hearing examiner are supported by substantial evidence, that there is no error of law, that DPW has not abused its discretion and that Petitioner's constitutional rights have not been violated.

ORDER

The order of the Department of Public Welfare, dated October 3, 1984, File No. 9-83-7, is affirmed.