538 A.2d 87

Spang Crest Home, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued November 20, 1987, before Judges MAC-PHAIL and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*James R. Adams, Barley, Snyder, Cooper & Barber,* for petitioner.

*William D. Lenahan,* Assistant Counsel, for respondent.

OPINION BY JUDGE MACPHAIL, February 22, 1988:

Spang Crest Home (Petitioner) appeals a final order of the Department of Public Welfare (DPW) which reversed an order of the Office of Hearings and Appeals (OHA) adopting a hearing examiner's recommendation to sustain Petitioner's appeal of a decision of DPW's Bureau of Reimbursement Methods.

Petitioner, a private long-term care facility owned and operated by Lutheran Social Services—Eastern Region (LSS), is a participant in the Pennsylvania Medical Assistance Program. As such, Petitioner is entitled to cost-related reimbursement for care provided to qualified medical assistance patients. *See* Section 443.1 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* added by Section 5 of the Act of July 31, 1968, P.L. 904, 62 P.S. §443.1. DPW, which administers the Program in accordance with federal law,[1] has promulgated regulations governing reimbursements in the Manual for Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care

---

[1] *See* 42 U.S.C. §1396a.

Facilities (Manual). The regulation at issue in the case *sub judice,* Section IV-D-10-e of the Manual, first published at 5 Pa. B. 2933 (1975), provides: "Interest expense reduced by investment income, except when the investment income is derived from gifts or grants which are restricted by the donor and which are accounted for separately from other funds, will be recognized."[2]

In the case before us, Petitioner challenges DPW's adjustment of its allowable cost for interest on capital indebtedness for the fiscal year ending December 31, 1982, and the fiscal periods January 1, 1983 to June 30, 1983 and July 1, 1983 to December 31, 1983. Following an audit of Petitioner's cost reports for these periods, DPW offset Petitioner's claimed interest expense by certain trust income payable to Petitioner, concluding that this was "investment income."

The trust income at issue arises from a trust created by Amelia Spang Strickler (Strickler Trust) by which Ms. Strickler donated her home to what is now the Southeast Pennsylvania Synod of the Lutheran Church of America[3] to establish Petitioner as a nursing home. It provided that Petitioner "is to be maintained, in so far as may be, from the income from the fund of Fifty Thousand ($50,000.00) Dollars, which I am giving to The Evangelical Lutheran Ministerium of Pennsylvania and the Adjacent States, in trust, toward the maintenance of said home." Reproduced Record (R.R.) at 84a; Notes of Testimony (N.T.) from June 17, 1985 at 16-18, R.R. at 53-55a.

LSS's controller testified that the home office receives a check from interest generated by the Strickler Trust from "the Fidelity Bank." That money is then

---

[2] A similar provision is now contained in 55 Pa. Code §1181.260.

[3] LSS is an agency of the Central Pennsylvania Synod and has no direct relationship with the Southeast Pennsylvania Synod.

commingled with other funds LSS receives from a variety of sources and is used to operate and maintain the various facilities under the ownership and control of LSS. The witness further stated that the interest check LSS receives from the bank is not set aside in a special account for the benefit of Petitioner.

Petitioner argues that the income from the Strickler Trust should be treated as a gift and, accordingly, for that reason did not account for it as an offset to its interest expense under Section IV-D-10-e.

Petitioner appealed the DPW audits[4] and hearings were held on June 17, 1985 for the 1982 audit, docketed at File No. 23-84-11, and on July 15, 1985 for the 1983 audits, docketed at File Nos. 23-85-074 and 23-85-095. At the second hearing, the parties agreed that the testimony previously taken as to the 1982 fiscal year would be incorporated into the record of the latter hearing. N.T. from July 15, 1985 at 3-4, R.R. at 71a-72a. The hearing examiner recommended in both proceedings that Petitioner's appeals be sustained, concluding that the trust income received by Petitioner was a donation that was not required to be offset against Petitioner's interest expense. The OHA adopted the examiner's recommendations in both cases.

Upon reconsideration,[5] DPW Executive Deputy Secretary Baxter reversed the OHA's determination as

---

[4] Petitioner also appealed an adjustment by DPW to Petitioner's depreciation schedule for its building. This appeal was denied by the OHA, but upon reconsideration, the decision was amended in favor of Petitioner. Following the final order, Petitioner withdrew an appeal of the depreciation issue pending with this Court at 406 C.D. 1986

[5] Our review of the record reveals that DPW's request for reconsideration was only of the 1983 appeals at File Nos. 23-85-074 and 23-85-095, and that a subsequent motion by DPW to extend the request to include the 1982 appeal at File No. 23-84-11 was not acted upon. We will disregard this administrative error and reach

to the investment income issue. Petitioner's appeal of this final order is now before us for disposition.

Petitioner argues that the Secretary erroneously reversed the OHA's adoption of the examiner's decision sustaining Petitioner's appeal and requests that we reinstate the examiner's decision. As stated by Petitioner, the precise issue is whether or not the income from the Strickler Trust is investment income attributable to Petitioner where the income was not earned by Petitioner and where Petitioner has no control over the trust corpus or the investment but only received the income as a gift.

Initially, we note that our scope of review of a DPW decision is limited to a determination of whether the adjudication is supported by substantial evidence, is in accordance with law, or whether constitutional rights were violated. *Harston Hall Nursing and Convalescent Home, Inc. v. Department of Public Welfare,* 99 Pa. Commonwealth Ct. 475, 513 A.2d 1097 (1986). We also recognize that an administrative agency's interpretation of its own regulations is controlling unless the interpretation is plainly erroneous or inconsistent with either the regulation or the statute under which it is promulgated. *Department of Public Welfare v. Forbes Health System,* 492 Pa. 77, 422 A.2d 480 (1980).

We point out at this juncture that as of July 1, 1983, the following DPW regulation defining "investment income" became effective:

> Actual or imputed income available to or accrued by a facility from funds which the facility invests or lends or which are held by others for the benefit of the facility.

55 Pa. Code §1181.202. It is clear to us that this regulation would be applicable to the appeal at DPW File No.

the merits of both appeals inasmuch as Petitioner has not raised the issue and both parties have addressed the two appeals.

23-85-095 for the six-month period ending December 31, 1983. We are satisfied that under the new regulation, Petitioner's income from the Strickler Trust was income available to Petitioner from funds "held by others for the benefit of the facility." Accordingly, this income was properly used to offset Petitioner's interest expense for the second half of 1983.

With regard to Petitioner's appeal of the audit for the fiscal year ending December 31, 1982 and the six-month period ending June 30, 1983, we must determine whether the income Petitioner received from the Strickler Trust was investment income within the meaning of the law prior to July 1, 1983.

In concluding that Petitioner's trust income was not "investment income," the examiner relied on the decision of this Court in *County of Lancaster v. Department of Public Welfare,* 72 Pa. Commonwealth Ct. 639, 457 A.2d 1000 (1983), wherein we stated: "We cannot fairly assign to the county home any investment income arising from *principal not controlled by, or otherwise attributable to,* the county home." *Id.* at 646, 457 A.2d at 1003 (emphasis added). Applying our decision in *County of Lancaster* and the existing regulations, this Court stated in *Tressler Lutheran Service Associates, Inc. v. Department of Public Welfare,* 100 Pa. Commonwealth Ct. 279, 289, 514 A.2d 661, 666 (1986) (footnote omitted):

> [I]n determining whether interest expense should be reduced by investment income under Section IV(D)(10)(e) of the Manual, (1) there must be investment income earned by the care provider, (2) the investment income must be controlled by or otherwise attributable to the facility in question and (3) the amount of investment income restricted by the donor will not be

used to reduce the amount of interest expense to be reimbursed.

Citing *County of Lancaster,* Petitioner argues that the income earned on the Strickler Trust was not "attributable to" itself or LSS because Petitioner exercised no control over the assets generating the income.

In *County of Lancaster,* the issue was whether the income from funds earmarked for the county home but included in the county's general fund was investment income attributable to the county home. Because the record revealed that the county home operated at a deficit and had no funds to invest and because there was no record evidence to show that the general fund monies were subject to any control or disposition by the home, we rejected DPW's claim that a portion of the interest earned on investments made from monies in the general fund could be used to offset the county home's interest expense.

In *Tressler* we upheld DPW's offsetting of income against interest in circumstances somewhat similar to those present here. Tressler's home office managed five nursing home facilities. None of those facilities generated any money for investment by the home office, all of the interest income being earned on funds received from outside sources which were held and managed by the home office. DPW offset the interest earned by the home office against each facility's interest on capital indebtedness because it determined that the interest earned by the home office was available interest income to each facility.

The one significant difference between the facts in *County of Lancaster* and *Tressler* and the facts in the case now before us, is that the interest at issue here was *not* generated by the umbrella entity, *i.e.,* LSS. As we have noted, the income here came from a trust apparently managed by a bank where the *donor's* specific in-

tent in setting up the trust was to benefit Petitioner. *Cf. Odd Fellows Home of Pennsylvania v. Department of Public Welfare,* 56 Pa. Commonwealth Ct. 115, 424 A.2d 961 (1981) (income generated from segregated funds established by entity's corporate by-laws does not qualify as restricted gift by donor).

In reversing the order of the OHA, DPW gave as its sole reason therefor the fear that if the decision of the OHA prevailed,

> [A] home office which operates one or more facilities could generate a substantial amount of interest income while continually allowing its facilities to operate at a loss. . . . [T]he public interest would not be served by allowing the home office to shield a substantial amount of interest income thereby increasing the cost of the Medical Assistance Program.

DPW's final order does not dispute any findings made by the hearing officer, which findings were adopted in their entirety by the OHA. The result feared by DPW may in fact occur, but if Petitioner's action has conformed with DPW's own regulation, we will not invalidate that action solely because of the result which DPW fears *may* occur.

Returning then to the language of Section IV-D-10-e of the Manual, and considering our holdings in *County of Lancaster* and *Tressler,* we are satisfied that the interest at issue here was not generated by LSS nor by Petitioner but was interest from funds specifically restricted by the donor for the maintenance of what was at the time of the creation of the trust, the beginning of Spang Crest Home.

The regulation also requires that such restricted investment income will nevertheless be deemed an offset to interest expense unless it also is accounted for separately from other funds. Here, as we have noted,

LSS commingles the income from the Strickler Trust and does not pass on to Petitioner, either in kind or in goods or services which can be identified as having been purchased by those funds, the exact dollar amount received from the trust. It is also true, however, that LSS can, as an accounting matter, identify exactly how much money it did receive from the trust. Since that income is accounted for by LSS on its books and is easily ascertainable for audit purposes by the DPW, we do not think the subsequent commingling of that income is fatal to Petitioner's effort to apply the restricted income exceptions set forth in Section IV-D-10-e. As we have noted, moreover, DPW did not reverse the OHA order because the funds were commingled.

For the reasons set forth above, we conclude that the DPW order should be affirmed as to that part thereof relating to the six-month period ending December 31, 1983 but reversed as to that part thereof relating to the fiscal year ending December 31, 1982 and the six-month period ending June 30, 1983.

## ORDER

The order of the Department of Public Welfare dated June 4, 1986 is reversed insofar as it reversed the Office of Hearings and Appeals order for the audit periods ending December 31, 1982 and June 30, 1983. In all other respects, said order is affirmed.