628 A.2d 847

**PENNSYLVANIA FINANCIAL RESPONSIBILITY ASSIGNED CLAIMS PLAN and Constitution State Service Company, Appellants,**

v.

**Maria D. ENGLISH, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 29, 1992.

Filed May 28, 1993.

Reargument Denied Aug. 9, 1993.

A. Richard Feldman, Philadelphia, for appellants.

David H. Rosenberg, Darrell C. Dethlefs, Harrisburg, for appellee.

James R. Ronca, Harrisburg, Leonard A. Sloane, Jennifer L. Abram, Media, amicus curiae for the Pennsylvania Trial Lawyers Assn.

Before DEL SOLE, POPOVICH and HUDOCK, JJ.

HUDOCK, Judge:

At issue in the present appeal is whether the Assigned Claims Plan (the Plan), 75 Pa.C.S. §§ 1751–1757,[1] of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1702, *et seq.*, must continue to provide uninsured motorist benefits to occupants of uninsured vehicles in light of the recent amendments to the MVFRL (Act 6).[2]  For the reasons stated below, we find that the Plan is not required to provide such coverage, and, therefore, reverse the order of the trial court.

The facts of this case are simple:  Maria English (English) was injured while a passenger [3] in an uninsured vehicle which was struck by another uninsured vehicle at an intersection in Steelton, Pennsylvania, on August 26, 1990.  English submitted an application for benefits to the Plan, which processed the application and paid English's medical expenses under section 1753 of the MVFRL, but denied English uninsured motorist benefits under section 1754 of the MVFRL.  The Plan then

1.  The Plan provides benefits to individuals who are injured in an automobile-related accident and who are not otherwise entitled to receive insurance benefits.  *See generally, Jackson v. Travelers Insurance Co.,* 414 Pa.Super. 336, 606 A.2d 1384 (1992).

2.  Section 31 of Act 1990, Feb. 7, P.L. 11, No. 6, repealed all other acts and parts of acts inconsistent with this act.

3.  According to English, at the time of the accident she did not own a motor vehicle and did not, therefore, have insurance.

filed a declaratory judgment action in the Court of Common Pleas of Dauphin County, seeking a declaration that it was not required to pay uninsured motorist benefits to English. Both sides filed motions for judgment on the pleadings, and on March 12, 1992, the trial court denied the Plan's motion and granted English's, holding that she was an eligible claimant under section 1752(a)(5) of the MVFRL. This appeal followed.

In reviewing a grant of judgment on the pleadings, we note that our scope of review is plenary. *Keystone Automated Equipment Co., Inc. v. Reliance Insurance Co.*, 369 Pa.Super 472, 535 A.2d 648 (1988), *alloc. den.*, 519 Pa. 654, 546 A.2d 59. This Court must determine whether the action of the trial court was based upon a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury. *Vogel v. Berkley*, 354 Pa.Super. 291, 511 A.2d 878 (1986). Judgment on the pleadings may only be granted where no material facts are in dispute and the case is free from doubt so that a trial would clearly be a fruitless exercise. *Keystone Automated Equipment Co., Inc., supra.*

Act 6 brought several important changes to the MVFRL, one of which is that uninsured and underinsured motorist insurance coverage is no longer mandated coverage in all policies of insurance issued in Pennsylvania. Thus, the Plan contends that a claimant in an uninsured vehicle is not eligible for uninsured motorist benefits from the Plan, since the claimant is an occupant of a vehicle whose owner is not required to provide uninsured motorist coverage. We agree. Section 1752(a) of the MVFRL sets forth the definition of an eligible claimant. Sections 1753 and 1754 then provide what benefits are available to an eligible claimant. These sections read:

§ 1752. **Eligible claimants**

(a) **General rule.**—A person is eligible to recover benefits from the Assigned Claims Plan if the person meets the following requirements:

(1) Is a resident of this Commonwealth.

(2) Is injured as the result of a motor vehicle accident occurring in this Commonwealth.

(3) Is not an owner of a motor vehicle required to be registered under Chapter 13 (relating to registration of vehicles).

(4) Is not the operator or occupant of a motor vehicle owned by the Federal Government or any of its agencies, departments or authorities.

(5) *Is not the operator or occupant of a motor vehicle owned by a self-insurer or by an individual or entity who or which is immune from liability for, or is not required to provide, benefits or uninsured and underinsured motorist coverage.* (Emphasis added.)

(6) Is otherwise not entitled to receive any first party benefits under section 1711 (relating to required benefits) or 1712 (relating to availability of benefits) applicable to the injury arising from the accident.

(7) Is not the operator or occupant of a recreational vehicle not intended for highway use, motorcycle, motor-driven cycle or motorized pedalcycle or other like type vehicle required to be registered under this title and involved in the accident.

## § 1753. Benefits available

An eligible claimant may recover medical benefits, as described in section 1712(1) (relating to availability of benefits), up to a maximum of $5,000. No income loss benefit or accidental death benefit shall be payable under this subchapter.

## § 1754. Additional coverage

An eligible claimant who has no other source of applicable uninsured motorist coverage and is otherwise entitled to recover in an action in tort against a party who has failed to comply with this chapter may recover for losses or damages suffered as a result of the injury up to $15,000 subject to an aggregate limit for all claims arising out of any one motor vehicle accident of $30,000. If a claimant recovers medical benefits under section 1753 (relating to benefits available),

the amount of medical benefits recovered or recoverable up to $5,000 shall be set off against any amounts recoverable in this section.

■ The crux of the present dispute is the interpretation to be given section 1752(a)(5). Because uninsured and underinsured motorist coverage have become optional, the Plan claims that English *is* the "occupant of a motor vehicle owned by ... an individual ... who is not required to provide ... uninsured and underinsured motorist coverage" and is, therefore, an ineligible claimant for this coverage. Thus, the Plan claims that English is an ineligible claimant and cannot recover uninsured motorist coverage under the Plan.[4]

■ Whether uninsured and underinsured motorist coverage is still required to be carried in all insurance policies issued in Pennsylvania is the critical question. Act 6 was enacted specifically for the purpose of reducing the rising

---

4. Initially, we note that the phrase "not required to provide, benefits or uninsured and underinsured motorist coverage" is disjunctive. The Plan, apparently consistent with the opinion of the Insurance Commissioner, contends that this phrase should be read to render a claimant ineligible for only those types of coverage not required to be carried in all policies. To the contrary, the trial court, finding no ambiguity in the section, agreed with English that if the claimant was an owner or occupant of a motor vehicle required to carry *either* benefits *or* uninsured and underinsured motorist coverage, then the claimant is eligible to recover both. Both the trial court and English also note that the Plan acted inconsistently in finding English an eligible claimant under Section 1753 but not so under Section 1754.

Neither construction withstands the plain meaning of the subsection. Our reading of the subsection would render a claimant ineligible if he or she is an owner or occupant of a motor vehicle who is not required to provide *either* benefits *or* uninsured and underinsured motorist coverage. Put differently, a claimant is eligible only if both types of coverage are required. Section 1711 of the MVFRL *still* requires medical benefits in all contracts of insurance. Thus, eligibility depends upon whether uninsured and underinsured motorist coverage is still required.

In its brief, the Plan explains why it paid medical benefits to English. While laudable, this interpretation cannot stand when faced with the plain meaning of the subsection. Moreover, the fact that the Plan paid these benefits is not at issue on appeal. Finally, because this payment is not at issue, we need not address the claim as to whether the Plan properly received and relied on a formal opinion from the Insurance Department.

costs of insurance. For example, policyholders were allowed to elect a tort limitation option in which they agreed to limit their recovery in court for injuries from auto accidents in exchange for a lower premium. *See* 75 Pa.C.S. § 1705. Another change occurred with respect to uninsured and underinsured motorist coverage. This change is found in § 1731 of the MVFRL and is best viewed by comparing the section as it read before and after Act 6. Formerly, Section 1731(a) read as follows:

**(a) General rule.**—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are *provided* therein or supplemental thereto in amounts equal to the bodily injury liability coverage except as provided in section 1734 (relating to request for lower or higher limits of coverage).

Section 1731(a) now provides:

(a) **Mandatory offering.**—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are *offered* therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). *Purchase of uninsured motorist and underinsured motorist coverages is optional.* (Emphasis added.)

Before the passage of Act 6, it was indeed the case that all insured vehicle operators were required to have uninsured and underinsured motorist coverage. After the passage of Act 6, uninsured and underinsured motorist coverage became, in the words of the statute, "optional". It is a principle of statutory construction that words and phrases are to be construed according to their common usage. *Odd Fellows Home of Pennsylvania v. Com., Dept. of Public Welfare*, 56 Pa.Cmwlth. 115, 424 A.2d 961 (1981), (*citing Township of Derry, Dauphin County v. Swartz*, 21 Pa.Cmwlth. 587, 346 A.2d 853 (1975)).

In plain English, then, "optional" means "not required". Therefore, English cannot be an eligible claimant under § 1752(a)(5) because the owner of the vehicle in which she was an occupant was not required to provide uninsured and underinsured motorist coverage.[5]

We find the argument of English and *amicus curiae,* that English should be eligible for this uninsured coverage because she never waived uninsured and underinsured motorist coverage, wholly unpersuasive. Section 1731(b) reads:

**(b) Uninsured motorist coverage.**—Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles. The *named insured* shall be informed that he may reject uninsured motorist coverage by signing the following written rejection form:

REJECTION OF UNINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting uninsured motorist coverage under this policy, for myself and all relatives residing in my household. Uninsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage.

_____
Signature of First
Named Insured

_____
Date

(Emphasis added.)

While *amicus curiae* properly note that this waiver applies only to the named insured and all relatives residing in the

---

**5.** We also note that a similar interpretation has been given to Section 1752(a)(5) by a Pennsylvania District Court in *Solomon v. Pennsylvania Financial Responsibility Assigned Claims Plan,* 1992 WL 57926 1992 U.S.Dist, Lexis 3281 (E.D.Pa.1992), filed March 16, 1992.

insured's household, this fact does not alter our conclusion that uninsured and underinsured motorist coverage is now optional for all persons purchasing insurance. The legislature may have failed to realize the consequence the amendment to Section 1731 has had on the definition of an eligible claimant under the Plan. The courts of this Commonwealth, however, cannot judicially rectify this consequence; any refinement or subsequent amendment must come from the legislature.

As stated *infra*, our interpretation of the plain meaning of Section 1752(a)(5) is, if the claimant is the operator or occupant of a motor vehicle whose owner is not required to provide either benefits or uninsured and underinsured motorist coverage, the claimant is ineligible for any coverage under the Plan. English argues that to read the statute to exclude her and others similarly situated from the category of eligible claimants is to effect a judicial repeal of the Plan. In a similar vein, *amicus curiae* argues that the Plan's interpretation of the subsection would result in the absurd result that a claimant's entitlement under the Plan would depend upon the distinction of whether the injured party was a passenger or a pedestrian. We are not persuaded by these assertions. English overlooks the fact that § 1752 still applies to those who are not operators or occupants of motor vehicles, namely pedestrians. Contrary to the position of the *amicus curiae*, we do not believe that any distinction made between vehicle occupants, on the one hand, and pedestrians, on the other hand, is absurd.[6] Pedestrians have no choice as to whether the vehicle which injures them is insured or uninsured; occupants make conscious decisions to ride in a particular vehicle and must accept the attendant risks as to the financial responsibility of the owner. Furthermore, we agree with the Plan that an uninsured pedestrian who is struck by an uninsured vehicle is not placed in a more favorable position than a pedestrian who is struck by an insured vehicle. The pedestrian struck by the

6. We note that this Court, in interpreting other sections of the MVFRL, has previously made a distinction between pedestrians and operators of motorcycles. In *Green v. K & K Ins. Co.*, 389 Pa.Super. 73, 566 A.2d 622 (1989), we held that a pedestrian injured by a motorcycle is entitled to benefits under the MVFRL, even though the owner of the motorcycle and his passengers are excluded.

uninsured vehicle can recover from the Plan, and a pedestrian stuck by an insured vehicle can recover from the vehicle owner's liability policy. The case is different with operators and occupants of vehicles, however. Since uninsured motorist coverage is now optional, if the owner has made a decision to save money in the form of lower premiums by rejecting uninsured motorist coverage, the operator or occupant of the vehicle will be bound by that decision and will be ineligible for uninsured motorist benefits.[7] We see no reason why the occupant of an uninsured vehicle should receive more favorable treatment than his counterpart in an insured vehicle whose owner elected not to carry uninsured motorist coverage. Such a result is clearly contrary to the aims of the MVFRL and sound public policy.[8] Thus, we hold that the trial court erred when it found that English was an eligible claimant and granted her motion for judgment on the pleadings and denied the same of the Plan.

Order reversed; the matter is remanded for entry of judgment in favor of appellants. Jurisdiction relinquished.

DEL SOLE, J., files a dissenting opinion.

DEL SOLE, Judge, dissenting:

I must dissent from the Majority's conclusion that, as a result of the passage of Act 6 of 1990, a passenger in an

---

7. In the present case, neither of the owners of the vehicles involved in the accident had insurance. We recognize that, under the proper factual scenario, the driver of the other car may be insured, and the passenger in the uninsured vehicle may be able to recover under that policy.

Consistent with its claim that the waiver of uninsured benefits applies only to the insured and the members of his or her household, *amicus curiae* argue that a passenger in a car that has waived uninsured motorist coverage, and who is not a member of the insured's household, may recover under the Plan. *Amicus curiae* cite to no case law to support this position and, as noted above, we interpret the section differently.

8. Section 1786(a) of the MVFRL provides:

§ 1786. **Required financial responsibility**

(a) **General rule.**—Every motor vehicle of the type required to be registered under this title which is operated or currently registered shall be covered by financial responsibility.

uninsured vehicle is now an ineligible claimant under the Assigned Claims Plan, 75 Pa.C.S.A. § 1751, *et seq.* I believe that such a conclusion is contrary to the plain reading of the statute, and its purpose and would create the absurd result of disallowing recovery to innocent passengers and yet permit recovery to pedestrians struck by an uninsured vehicle.

The Motor Vehicle Financial Responsibility Law of 1984 set forth the provisions of the Assigned Claims Plan in Subchapter E. Those who are eligible to recover benefits were listed in Section 1751, 75 Pa.C.S.A. At issue in this case is an interpretation of Subsection (a)(5). It provides:

A person is eligible to recover benefits from the Assigned Claims Plan if the person meets the following requirements:

. . . . .

(5) Is not the operator or occupant of a motor vehicle owned by a self-insurer or by an individual or entity who or which is immune from liability for, or is not required to provide, benefits or uninsured and underinsured motorist coverage.

75 Pa.C.S.A. § 1752

The critical language in this case concerns one who is an "occupant of a motor vehicle owned by . . . an individual . . . who . . . is not required to provide, benefits or uninsured and underinsured motorist coverage." The Majority reasons that since under Act 6, uninsured and underinsured coverage is no longer required, the owner of the motor vehicle in which the claimant was traveling was not required to provide uninsured and underinsured motorist coverage, thus the claimant is ineligible. I must disagree with this reasoning.

First, the Majority errs by not reading the statutory provision in its entirety, but instead focusing on on the language "not required to provide . . . uninsured and underinsured motorist coverage." The statute excludes coverage to a passenger traveling in an automobile owned by one "who is not required to provide benefits *or* uninsured and underinsured motorist coverage. It is undisputed that Act 6 made optional only uninsured and underinsured motorist coverage. The optional provisions of Act 6 did not concern other benefits. Thus, as long as the motor vehicle in which the claimant was

traveling was owned by one who was required to provide benefits *or* uninsured and underinsured motorist coverage, the claimant is eligible to recover under the Assigned Claims Plan. Since the owner of the vehicle did not make any arrangements which would place her outside the mandatory coverage requirements, *See* 75 Pa.C.S.A. § 1782, she was one who was required to provide benefits and the passenger in her vehicle should not be excluded from eligibility by § 1752(a)(5).

Secondly I believe it is wrong to conclude that the optional provisions set forth in Act 6, are to be used in interpreting § 1752(a)(5). The statutory language at issue was written long before the optional provisions of Act 6 existed and referred to two different classes of persons who would be deemed ineligible to recover benefits from the Assigned Claims Plan; those who are operators or occupants of an automobile owned by either a 1) self-insurer or 2) an individual or entity who or which is immune from liability or not required to provide benefits or uninsured or underinsured motorist coverage. The categories listed correspond to the legislative mandate which, absent proof of the purchase of an automobile liability insurance policy, requires that proof of financial responsibility be furnished in one of two ways. Under 75 Pa.C.S.A. § 1782 a person can demonstrate financial responsibility by furnishing proof that the vehicle is covered "by a program of self-insurance" or by filing evidence that "other reliable financial arrangements, deposits, resources or commitments acceptable to the department" exist. 75 Pa. C.S.A. § 1782. In these two situations where owners are either "self-insurers" or have filed evidence demonstrating the existence of acceptable "financial arrangements" (self-certifiers), the purchase of an automobile insurance policy is not required. Since § 1752(a)(5) addresses those who operate or occupy a vehicle owned by a self-insurer or one who is immune from liability or not required to provide benefits or uninsured/underinsured coverage, it is evident that the legislature was referring to the two types of owners it described in 75 Pa.C.S.A. § 1782(a), who are not required to purchase a policy of automobile insurance to satisfy the requirement of financial responsibility, 75 Pa.C.S.A. § 1786.

Because the provisions of § 1752(a)(5) refer to two types of owners, who existed and who were identified in legislation which was enacted at the same time as it, I believe that it is improper to conclude that the legislature 6 years later, when passing Act 6, intended to include a new all encompassing group of owners to § 1752(a)(5) without specifically stating so. Previous to the passage of Act 6 persons in the claimant's position were permitted to recover uninsured motorist benefits under the Assigned Claims Plan. *See Tubner v. State Farm Mutual Automobile Insurance Company*, 496 Pa. 215, 436 A.2d 621 (1981). It can be presumed that the Legislature was familiar with the existing case law when Act 6 was passed, 1 Pa.C.S.A. § 1921(c)(5), yet it left § 1752 wholly intact. If the legislature had intended to modify the current state of the law so that only pedestrians and bicyclists were covered under the Assigned Claims Plan, I believe that it can be presumed that they would have done so expressly. The legislature did appear to have been aware of the effect of Act 6 on the Assigned Claims Plan because it did make a change to § 1753 by deleting language referring to funeral benefits to reflect the reduction of mandatory first party benefits. No changes were made to § 1752.

Not only do I believe that the legislature would have made an express change in the definition of eligible claimants had it intended Act 6 to change the eligibility requirements, but I believe that it is incomprehensible that the legislature would consider such a change because it would have an unfair and unreasonable result. The Majority disputes this characterization and claims that its interpretation would not lead to an absurd result because pedestrians and occupants or operators of vehicles owned by another can logically be treated different. The Majority reasons that: "[p]edestrians have no choice as to whether the vehicle which injures them is insured or uninsured; occupants make conscious decisions to ride in a particular vehicle and must accept the attendant risks as to the financial responsibility of the owner." Majority Opinion at 851. It is precisely this distinction which I find untenable.

A passenger of a vehicle owned by another, who has no insurance of their own, perhaps because they did not own an

motor vehicle, should be no more responsible for the owner's failure to obtain uninsured motorist coverage than should a pedestrian. Neither person can, or should, be charged with knowing the status of insurance held by the owner of the vehicle. The Majority suggests that occupants make conscious decisions to ride in a particular vehicle, but it cannot be reasonably expected that such an occupant would quiz the owner about status of insurance on the vehicle. Does the majority expect every person who travels in another's car to question the owner about the scope of coverage on the vehicle or face the consequence of being denied benefits in the event of an accident? If occupants are expected to question owners, should occupants rely on an owner's response or should more formal proof be required? I cannot believe that the legislature would require such conduct on the part of every person who has ever traveled in a friend or relative's car.

Because I believe the application of Act 6 to the eligibility requirements under the Assigned Claims Plan would lead to an absurd result and because the § 1752 is clear in defining those who are excluded, and that the claimant in this case does not fall within its definition, I dissent from the Majority's ruling and would affirm the trial court decision.